CASE NO: 15-15197-GG
IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

_____

ORLINE SIDMAN, et al.,

Appellants,

vs.

TRAVELERS CASUALTY AND SURETY,

Appellee.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

Honorable Richard A. Lazzara

_____

**INITIAL BRIEF OF APPELLANTS**

_____

Raymond T. Elligett, Jr., Esq.    George A. Vaka, Esq.
Mark P. Buell, Esq.    Nancy A. Lauten, Esq.
Buell & Elligett, P.A.    Vaka Law Group, P.L.
3003 W. Azeele Street, Ste. 100    777 S. Harbour Island Blvd., Ste. 300
Tampa, Florida 33609    Tampa, FL 33602
(813) 874-2600    (813) 549-1799
Attorneys for Appellant Orline M. Sidman    Attorneys for Florida Policyholders

Appeal Number:  15-15197-GG
*Sidman, et al. v. Travelers*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Appellants, ORLINE M. SIDMAN, as Personal Representative of the Estate of Phyllis Ann Kirkwood, and FLORIDA POLICYHOLDERS, LLC, in compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, hereby certified that below is complete list of all persons and entities known to the filer that have an intrest in the outcome of this particular case or appeal:

1.     Aserlind, Bradley

2.     Buell & Elligett, P.A.

3.     Buell, Mark P.

4.     Bush, Ronald E.

5.     Culbreath Isles Property Owners Association, Inc.

6.     Elligett, Jr., Raymond T.

7.     Faircloth, Shirley T.

8.     Florida Policyholders, LLC

9.     Jenkins, Honorable Elizabeth A.

10.    Kelly, Peter

Appeal Number:  15-15197-GG
*Sidman, et al. v. Travelers*

11.    Lauten, Nancy

12.    Lazzara, Honorable Richard A.

13.    Nunez, Paulino A., Jr.

14.    Rodriguez Tramont & Nunez, P.A.

15.    Sidman, Orline M., as Personal Representative of the Estate of Phyllis Kirkwood

16.    Tramont, Andrew V.

17.    The Travelers Company, Inc. (TRV)

18.    Travelers Casualty and Surety Company

19.    Travelers Casualty and Surety Company of America

20.    Travelers Insurance Group Holdings, Inc.

21.    Travelers Property and Casualty Corp.

22.    Vaka, George A.

23.    Vaka Law Group, P.L.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant Kirkwood requests oral argument in this appeal.  Following this Court's finding of coverage under the policy at issue, Travelers led the district court into error again by making incorrect legal arguments upon which the court based its finding of no liability for indemnification.  Oral argument will provide the parties and the Court the opportunity to answer any unresolved questions as to Travelers' obligation to provide indemnification under the terms of the policy, Travelers' refusal to defend and its acquiescence to the settlement agreement.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT .................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF CITATIONS ..........................................................................vi

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION ........................................................................................1

STATEMENT OF THE ISSUES ...............................................................1

STATEMENT OF THE CASE ...................................................................2

    (i)    COURSE OF PROCEEDINGS AND
DISPOSITION IN THE COURT BELOW ......................................2

    (ii)    STATEMENT OF THE FACTS ...................................................3

        A.    BACKGROUND FACTS REGARDING THE
UNDERLYING HOMEOWNERS' ASSOCIATION
LAWSUIT AND RESULTING SETTLEMENT
AGREEMENT .................................................................3

        B.    PROCEEDINGS IN BREACH OF INSURANCE
CONTRACT SUIT REGARDING COVERAGE
FOR LOSSES BASED UPON CLAIM FOR
ATTORNEYS' FEES .......................................................8

        C.    ON APPEAL FROM SUMMARY JUDGMENT
RULING FOR TRAVELERS, THIS COURT HELD
THE POLICY PROVIDES COVERAGE FOR
LOSSES BASED UPON ATTORNEYS' FEE
CLAIMS .......................................................................10

        D.    PROCEEDINGS IN DISTRICT COURT
FOLLOWING REMAND .................................................11

E.     BENCH TRIAL ON ISSUE OF KIRKWOOD'S
       CONSENT TO SETTLEMENT AGREEMENT ................. 13

F.     THE DISTRICT COURT'S ORDER ................................ 14

       1.     DISTRICT COURT'S FACTUAL FINDINGS
              WITHIN THE POST-TRIAL ORDER REPEAT
              FACTS FROM EARLIER SUMMARY
              JUDGMENT ORDER ....................................... 14

       2.     THE DISTRICT COURT INCORRECTLY
              FAILED TO APPLY THE "VOUCHING IN"
              DOCTRINE ...................................................... 16

       3.     KIRKWOOD'S ATTORNEY HAD
              AUTHORITY TO ENTER INTO SETTLEMENT
              AGREEMENT ON HER BEHALF ...................... 17

       4.     KIRKWOOD'S GUARDIAN, SIDMAN,
              RATIFIED THE SETTLEMENT AGREEMENT .. 19

       5.     THE DISTRICT COURT MADE MULTIPLE
              UNSUPPORTED AND IRRELEVANT
              FINDINGS TO SUPPORT ITS CONCLUSION
              THAT TRAVELERS OWES NO
              INDEMNITY TO ITS INSURED ...................... 22

(iii)   STATEMENT OF THE STANDARD OR SCOPE
        OF REVIEW ..................................................................... 23

SUMMARY OF THE ARGUMENT ....................................... 23

ARGUMENT AND CITATIONS OF AUTHORITY ................ 24

        THE TRIAL COURT ERRED IN DETERMINING THE
        DECEMBER 28, 2010 CONSENT FINAL JUDGMENT COULD
        NOT BE ENFORCED AGAINST TRAVELERS ................ 24

A.    OVERVIEW:  THE DISTRICT COURT'S CHANGES IN
      POSITION LEAD TO THE SAME RESULT AS ITS
      REVERSED SUMMARY JUDGMENT MOTION ..................... 25

B.    COMMON LAW INDEMNITY IN FLORIDA AND THE
      IMPORTANCE OF WHAT AND WHEN THE
      INDEMNITOR KNOWS ABOUT THE CLAIM .................. 26

C.    *COBLENTZ* ESTABLISHES THAT VOUCHING IN
      APPLIES TO LIABILITY INSURERS ............................... 32

D.    NOTICE AND ITS EFFECT ON PROOF OF DAMAGES ....... 34

E.    EVEN IF FLORIDA LAW REQUIRES A SHOWING OF
      REASONABLENESS, TRAVELERS WAIVED SUCH A
      REQUIREMENT WHEN ITS ATTORNEYS STATED
      THAT TRAVELERS WOULD NOT BE CONTESTING
      THE AMOUNT AND THEREAFTER ACQUIESCED IN
      THE SETTLEMENT WHEN ALL MATERIAL TERMS
      OF THE SETTLEMENT AGREEMENT WERE
      DISCLOSED TO IT ...................................................... 37

F.    TRAVELERS WAS PRECLUDED FROM ARGUING
      DEFENSES TO THE UNDERLYING ACTION THAT
      COULD HAVE BEEN RAISED IN THE UNDERLYING
      STATE COURT ACTION ............................................. 44

G.    TRAVELERS LED THE DISTRICT COURT INTO
      ERROR UTILIZING UNSUPPORTED, RED-HERRING
      ARGUMENTS .......................................................... 47

      1.    BUELL HAD AUTHORITY TO ENTER INTO
            SETTLEMENT AGREEMENT ON BEHALF
            OF KIRKWOOD ............................................... 47

      2.    SIDMAN RATIFIED THE SETTLEMENT
            AGREEMENT AS A MATTER OF LAW .................. 50

3.    THE DISTRICT COURT INAPPROPRIATELY
UTILIZED A *COBLENTZ* ANALYSIS, SUPPORTED
BY ILLOGICAL FINDINGS .................................................... 52

4.    DISTRICT COURT'S CONCLUSION IS REPLETE
WITH INACCURACIES AND ILLOGICAL
FINDINGS ............................................................................ 55

CONCLUSION ..................................................................................... 56

CERTIFICATE OF COMPLIANCE ..................................................... 58

CERTIFICATE OF SERVICE .............................................................. 58

# TABLE OF CITATIONS

**CASE**                                                                        **PAGE**

*Atlantic Coast Development Corporation v.*
    *Napoleon Steele Contractors,*
    385 So. 2d 676, 681 (Fla. 1980) .............................................. 28, 35

*Bell v. USB Acquisition Co. Inc.*,
    734 So. 2d at 403, 411 (Fla. 1999) .............................................. 46

*Burke v. Ripp,*
    619 F. 2d 354, 358 (5th Cir. 1980) .............................................. 30, 31, 38

*\*Camp, Dresser & McKee, Inc. v. Paul N. Howard Company,*
    853 So. 2d 1072, 1079 (Fla. 5th DCA 2003) .............................. 28, 29, 31

*Category 5 Management Group, LLC v. Companion*
    *Property & Casualty Insurance Company,*
    76 So. 3d 20, 24 (Fla. 1st DCA 2011)
    Rev. den'd, 97 So. 3d 822 (Fla. 2012) ...................................... 45

*Centex-Rooney Construction Company, Inc. v. Martin County,*
    725 So. 2d 1255 (Fla. 4th DCA 1999) ...................................... 45

*Culbreath Isles Property Owners Ass'n,. v. Travelers*
    *Cas. and Sur. Co. of America,*
    601 Fed. Appx. 876 (2015) ...................................................... 2, 10

*Chomat v. N. Insurance Company of New York*,
    919 So.2d 535, 538 (Fla. 3d DCA) ............................................ 56

*Coblentz v. American Surety Company of New York,*
    416 F. 2d 1059 (5th Cir. 1969) .............................................. passim

*Continental Casualty Company v. Godur,*
    476 So. 2d 242 (Fla. 3d DCA 1985) .......................................... 28

*Coquina Investments v. TD Bank, N.A.,*
    760 F. 3d 1300 (11th Cir. 2014) .......................................... 28, 42

*Dade County School Board v. Radio Station WQVA,*
   731 So. 2d 638 (Fla. 1999) .................................................................. 26, 27

*Ferrara v. LCS Financial Services Corp.*,
   2015 WL 84703 (M.D. Fla. 2015) ................................................... 47

*First Baptist Church of Cape Coral, Fla. Inc. v.*
   *Compass Constr., Inc.*,
   115 So.3d 978 (Fla. 2013) ................................................................. 54

*Frederick v. Kirby Tankships, Inc.*,
   205 F.3d 1277, 1287 (11th Cir. 2000) ........................................ 47

*GAB Business Services, Inc. v. Syndicate 627,*
   809 F. 2d 755, 760 (11th Cir. 1987) ..................................... 28, 30, 31,
                                                                                           35, 36

*Gallagher v. Dupont,*
   918 So.2d 342, 347 (Fla. 5th DCA 2005) ............................... 47

*Grain Dealers Mut. Ins. Co. v. Quarrier,*
   175 So.2d 83, 86 (1965) ................................................................... 27

*Gulf Group Holdings, Inc. v. Coast Asset Management Corp.*,
   516 F. Supp. 2d 1253, 1262-63 (S.D. Fla. 2007) ............... 35

*Hull & Company, Inc. v. McGetrick,*
   414 So. 2d 243, 244 (Fla. 3d DCA 1982) ............................... 29

*In Matter of Garfinkle*,
   672 F. 2d 1340, 1347 (11th Cir. 1982) .................................. 38

*\*Jones v. Florida Insurance Guaranty Association, Inc.*,
   908 So. 2d 435, 450 (Fla. 2005) ............................................. 30, 31, 34,
                                                                                           35, 36, 37,
                                                                                           45

*K-Mart Corp. v. State Dept. of Transp.*,
   636 So.2d 131, 133 (Fla. 2d DCA 1994) ............................... 47, 48

*MacArthur v. Gaines,*
   286 So. 2d 608, 610 (Fla. 3d DCA 1973) ............................... 27, 35

*Mid-Continent Cas. Co. v. American Pride Building Co., LLC*,
    534 Fed. App. 926 (11th Cir. 2013) ......................................................36, 37

*Owen v. Owen,*
    376 So.2d 26 (Fla. App. 2 Dist. 1979) ...................................................50

*Parfait v. Jahncke Service, Inc.,*
    484 F. 2d 296, 304–305 (5th Cir. 1973), *cert. denied,*
    415 U.S. 957, 94 S. Ct. 1485, 39 L. Ed. 2d 572 (1974) ................31, 40, 42

*Ponce v. U-Haul Co. of Fla*.,
    979 So.2d 380, 382 (Fla. DCA  2008), *rev. denied*
    478 So.2d (Fla. 1985) ...........................................................................49

*Post Houses, Inc. v. Fireman's Fund Insurance Company,*
    469 So. 2d 863 (Fla. 1st DCA 1985) ...................................................28, 35

*Quintana v. Barad*,
    528 So. 2d 1300, 1301 n.1 (Fla. 3d DCA 1988) ...................................36

*Robbie v. City of Miami*,
    469 So.2d 1384 (Fla. 1985) ..................................................................56

*Salve Regina College v. Russell*,
    499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) ......................23

*Sinni v. Scottsdale Insurance Company,*
    676 F. Supp. 2d 1319, 1324 (M.D. Fla. 2010) .....................................36

*Standard Guarantee Insurance Company v. Quanstrom,*
    555 So. 2d 828 (Fla. 1990) ...................................................................45

*Steil v. Fla. Physicians' Insurance Reciprocal*,
    448 So. 2d 589, 582 (Fla. 2d DCA 1984) ............................................36

*Stephens v. Mid-Continent Casualty Company,*
    749 F. 3d 1318, 1321 (11th Cir. 2014) .................................................36

*Stuart v. Hertz Corporation,*
    351 So. 2d 703 (Fla. 1977) ...................................................................26

*Travelers Cas. and Sur. Co. of America v. Sidman,*
103 So.3d 900 (Fla. 2d DCA 2012) .................................................. 8

*Travelers Indemnity Co. v. Swanson*,
662 F. 2d 1098, 1102 (5th Cir. 1981) ............................................ 38

*TRG Columbus Dev. Venture, Ltd. v. Sifontes*,
163 So.3d 548, 552 (Fla. 3d DCA 2015) ........................................ 55

*University of Miami v. Wilson,*
948 So.2d 774 (Fla. App. 3 Dist. 2006) ....................................... 50, 51

*Vital Pharmaceutical, Inc. v. S.A.N. Nutrition Corp.*,
2007 WL 1655421, *5 (S.D. Fla. 2007) ....................................... 48, 49

*Yellow Pages Photos, Inc. v. Ziplocal, L.P.,*
795 F.3d 1255, (11th Cir. 2015) .................................................. 47

## STATUTORY AUTHORITIES

28 U.S.C. §1291 ............................................................................. 1

§744.102(9), Florida Statutes ......................................................... 50

## OTHER AUTHORITIES

Fed. R. Civ. P. 52(a)(6) .................................................................. 23

Webster's New World Dictionary, 3d College Ed. ......................... 56

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida following a bench trial, entered on October 22, 2015. The Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Travelers denied coverage to its insured (Culbreath), and told Culbreath to take actions to protect itself.[1] Travelers advised Kirkwood's counsel there was no reason for Travelers to participate in the evidentiary hearing to set the amount of fees against Culbreath because "I don't think Travelers plans on contesting the amount." Culbreath informed Travelers of the material terms of the $295,000 settlement amount before Kirkwood and Culbreath cancelled that hearing and finalized the settlement. Travelers voiced no objection.

However, after this Court reversed the prior summary judgment and held that Travelers did owe its insured coverage, then Travelers argued the amount was excessive and obtained a second judgment on that basis. Can Travelers avoid its obligation to indemnify after refusing to defend, waiving its right to contest the

---

[1] Orline M. Sidman, Personal Representative for the Estate of Phyllis Kirkwood, refers to herself in this brief as "Sidman." She refers to Phyllis Kirkwood as "Kirkwood." She refers to Florida Policy Holders, LLC as "FP." She refers to Culbreath Isles Property Owners Association as "Culbreath." She refers to Sidman and FP collectively as "Plaintiffs." She refers to Travelers Casualty and Surety Company of America as "Travelers."

amount of fees and acquiescing to the terms of the settlement agreement?

## STATEMENT OF THE CASE

**(i)    Course Of Proceedings And Disposition In The Court Below**

Travelers denied coverage and refused to defend its insured, Culbreath, with regard to attorneys' fees claims made against it.  Culbreath kept Travelers informed of settlement negotiations, and Travelers was aware of the settlement terms prior to execution of a settlement agreement between Culbreath and Kirkwood.  Kirkwood sued Travelers for breach of its insurance contract. Travelers removed the suit to federal court.

The district court entered summary judgment for Travelers, finding no coverage for the fee claims under the terms of the policy at issue.  This Court reversed, finding the losses covered under the policy, and remanded for proceedings consistent with its opinion.  *Culbreath Isles Property Owners Ass'n,. v. Travelers Cas. and Sur. Co. of America,* 601 Fed. Appx. 876 (2015).  On remand, the district court held that only the issue of the underlying claimant's consent to the settlement agreement remained in dispute and held a bench trial to determine Travelers' obligation to indemnify.  The district court held the Florida state court judgment entered pursuant to the settlement agreement will not be enforced against Travelers (Doc 181).  Sidman and FP timely appealed (Doc 185).

**(ii)    Statement of The Facts**

    **A.    Background facts regarding the underlying homeowners' association lawsuit and resulting settlement agreement**

This breach of contract action arose after Travelers denied coverage to Culbreath, which Travelers insured under a Non-Profit Management and Organization Liability Policy (Doc 67-1). Culbreath, the insured homeowners' association, had sued two homeowners, Phyllis Kirkwood (Kirkwood) and Dr. and Mrs. Lewis (Lewises), in state court, seeking injunctions to enforce certain restrictive covenants (Doc 67-2). Culbreath's actions were brought pursuant to §720.305, Florida Statutes (Doc 67-2 − Pg 2).  Kirkwood's answer sought fees and costs, demanded a favorable interpretation of the restrictive covenants, and brought a counterclaim for slander of title (Doc 67-3 − Pg 2).  On July 16, 2009, Culbreath provided timely notice of Kirkwood's claim for attorney's fees to Travelers (Doc 67-30).[2]

Financial constraints made Kirkwood unable to continue paying her attorneys' fees.  On July 9, 2009, she entered into a contingency fee contract with Buell & Elligett, P.A. which provided for a $300 hourly rate, with a success bonus, or alternative fee, of $900 per hour (Doc 67-20).

Following complicated litigation involving unique procedural issues,

---

[2] The Kirkwood and Lewis actions were consolidated on October 8, 2009 (Doc 67-4).

including an effort by Culbreath to reform the restrictive covenants through use of a defendant class action, Kirkwood and the Lewises prevailed on summary judgment (Doc 67-7, Doc 67-8).  Culbreath appealed this ruling, and the parties filed appellate briefs (Doc 170 – Pg 212-213).

Following a hearing on a motion for entitlement to attorneys' fees, the state trial court found Kirkwood and the Lewises entitled to reimbursement of their attorneys' fees from Culbreath pursuant to the prevailing party attorneys' fees provision of Section 720.305, Fla.Stat. (Doc 67-12).

Travelers denied Culbreath's request to defend, denied coverage with regard to the claim for attorneys' fees, and told Culbreath to take whatever steps it deemed appropriate to protect itself (Doc 67-40, Doc 67-44).  Nonetheless, Culbreath kept Travelers informed of ongoing settlement negotiations, and Travelers participated in these negotiations (Doc 67-37, Doc 61-51, Doc 67-39).  Culbreath also continued to make efforts to convince Travelers to honor its contract to provide coverage (Doc 170 − Pg 244).

An evidentiary hearing on the amount of fees was scheduled for multiple dates in the fall, and was rescheduled for December 17, 2010.  Travelers received notice of each of the hearings (Doc 67-13).  Kirkwood's counsel prepared to attend the hearing, and had hired an expert prepared to testify to a reasonable hourly rate of $450 with a multiplier of as much as 2.5, with the fees totaling

approximately $400,000 (Doc 166 – Pg 130).

During November 2010, Kirkwood became ill and was hospitalized (Doc 168 – Pg 114). At this time, as noted within Travelers' claim file, settlement negotiations had been ongoing. Kirkwood had expressed her desires for resolution of the dispute with her attorney on many occasions prior to her hospitalizations. Kirkwood made her settlement demands clear to Attorney Buell, and he memorialized her demands in letters sent to Culbreath's counsel (Doc 151 – Plaintiff's Trial Exhibits 4, 10, 52). Her demands were simple: dismiss the suit with prejudice and pay her fees.

During late October or early November 2010, Travelers' coverage counsel, Andrew Tramont, become involved in the action (Doc 166 – Pg 115), and Travelers' claims counsel discontinued settlement discussions with Culbreath. Prior to the scheduled evidentiary hearing, Tramont informed Kirkwood's counsel that Travelers had no interest in attending the hearing on fees, stating "**there is really no reason for Travelers to participate in the evidentiary portion of the fee hearing, which will merely set the amount. I don't think Travelers plans on challenging the amount**" (Doc 166 – Pg 117-118; Doc 67-41).

Culbreath's counsel (Friscia) testified that Kirkwood's counsel had advised that Kirkwood's expert was prepared to testify to a $400,000 fee. Friscia testified that based upon his knowledge of the case, its complexity and the vigor with which

it had been prosecuted and defended, he believed the settlement amount of $295,000 was reasonable (Doc 170 – Pg 252). Friscia had obtained an affidavit from an attorney opining on Kirkwood's fees, but the affidavit failed to consider all of the time or the contingency multiplier (Doc 168 – Pg 50; Doc 153 – Defendant's Trial Exhibit 53).

At the time of the settlement agreement, Culbreath's liability for attorney's fees had been determined and only the amount Culbreath would be required to pay remained at issue. The $295,000 Culbreath agreed to for the Kirkwood *contingent* fee claim was commensurate with the amount of fees that had been *actually paid* by Dr. and Mrs. Lewis in the consolidated litigation, or $274,000 (Doc 67-25 – Pg 28).

Culbreath received a draft proposed settlement agreement from Kirkwood on December 9, 2010 (Doc 168 – Pg 9). Prior to the December 17, 2010 fee hearing, Friscia discussed the material terms of the proposed settlement agreement with Tramont, including the proposed $295,000 amount of the attorney's fee judgment for Kirkwood and Buell & Elligett (Doc 168 − Pg 9-10). Travelers did not object to the association's entry into the settlement agreement, or the terms. Travelers offered no guidance whatsoever in that regard, did not advise Culbreath not to enter into the agreement, and did not agree to appear at the fee hearing scheduled for December 17, 2010, to defend its insured (Doc 168 – Pg 11-12).

Travelers conceded it was informed of settlement discussions and was advised of the terms of the settlement agreement prior to Culbreath entering into the agreement (Doc 178 – Pg 2).  Travelers asserted that because it denied coverage, "**Travelers did not have an obligation to do or say anything with regard to those claims**" (Doc 178 – Pg 6)(emphasis in original).

Therefore, only after Travelers refused to defend, after entry of the trial court's order obligating Culbreath to pay Kirkwood's fees, after Travelers received notice of the scheduled evidentiary hearing on the amount of fees, after Travelers informed Kirkwood's attorney that Travelers would not attend the evidentiary hearing on the amount of fees, after Travelers advised that it did not plan on challenging the amount of the fees, after Travelers was informed of the terms and amount of the settlement agreement, and after Travelers did not object or instruct Culbreath not to enter into the agreement - did Culbreath then enter into the Joint Stipulation and Agreement with Kirkwood for her fees and costs under the terms previously disclosed to Travelers (Doc 67-14).  Travelers voiced no objections.  Travelers has acknowledged this conversation took place (Doc 172 – Pg 6-7; Doc 178 – Pg 3).

The state trial court, who had entered summary judgment for Kirkwood and Lewis and who ordered Culbreath liable for fees and costs, approved the Joint Stipulated Settlement Agreement and entered the Consent Final Judgment (Doc

7

67-14, Doc 67-15).   Culbreath assigned the rights under the policy against Travelers to Kirkwood and Buell & Elligett, P.A. (Doc 67-21).  Buell & Elligett assigned its rights to Florida Policyholders, LLC (Doc 67-22).

The Lewises also entered into a settlement agreement with Culbreath in January, 2011 (Doc 61-26).  Culbreath maintained its right to sue Travelers for coverage for this claim.

### B.   Proceedings in breach of insurance contract suit regarding coverage for losses based upon claim for attorneys' fees

Kirkwood and Culbreath originally filed third-party breach of contract claims against Travelers in the underlying suit, but ultimately the state appellate court ruled the lower court lost jurisdiction when it entered the final judgments. *Travelers Cas. and Sur. Co. of America v. Sidman,* 103 So.3d 900 (Fla. 2d DCA 2012).  While a party to the state court case, Travelers did not seek relief from the final judgment.  Kirkwood and Culbreath then filed a state court suit for breach of contract against Travelers (Doc 2).  Travelers removed the suit to the Middle District of Florida (Doc 1).

In February of 2011, Orline Sidman (Sidman), who was represented by separate, independent counsel, was appointed guardian for Ms. Kirkwood (Doc 67-45 – Pg 4-5).  After the state court breach action was filed, Sidman sought and obtained judicial permission to pursue the coverage action on behalf of Kirkwood (Doc 153 – Plaintiffs' Trial Exhibit 127), and stepped into the shoes of Kirkwood

for purposes of seeking reimbursement from Travelers.

Travelers filed five separate answers and affirmative defenses in this suit and alleged six defenses to coverage, but never alleged lack of consent, bad faith, unreasonableness of the settlement, fraud or collusion as affirmative defenses (Doc 50). All parties moved for summary judgment. Within its motion for summary judgment, Travelers asserted, "this case raises a simple question of contract interpretation: **does the Policy Travelers issued to Culbreath indemnify Culbreath for its liability for fees incurred by, and awarded to, someone Culbreath unsuccessfully sued?**" (Doc 65 – Pg 12)(emphasis in original). Travelers argued (correctly) that Sidman was seeking indemnification, and that "refusal to indemnify does not implicate *Coblentz*." (Doc 74 − Pg 3). Travelers correctly asserted only indemnification was at issue because, unlike Sidman and FP at this point, Travelers was aware its insured had informed it of the terms of the settlement agreement, including the amount, prior to entering into the agreement.

The district court entered summary judgment in favor of Travelers, and held that in light of its finding that the policy did not provide coverage, Travelers' remaining arguments - Culbreath's alleged misrepresentations on the 2010 Policy renewal applications and Culbreath's alleged failure to comply with the notice provisions of the Policy need not be addressed (Doc 86 – Pg 17). These two

9

issues were relevant only to the Lewis claim. The district court did not identify lack of consent, *Coblentz* elements, or *any* issue applicable to Plaintiffs, Sidman and FP, as remaining issues.

### C.    On appeal from summary judgment ruling for Travelers, this Court held the policy provides coverage for losses based upon attorneys' fee claims

Plaintiffs appealed the finding of no coverage to this Court in Case No. 13-15414. *Culbreath Isles Property Owners Ass'n,. v. Travelers Cas. and Sur. Co. of America,* 601 Fed. Appx. 876 (2015). This Court stated "[t]he relevant facts are not in dispute, and the parties agreed at the district court level that this matter was ripe for resolution through summary judgment proceedings." (Doc 95 – Pg 4). Reversing the district, this Court held "based on Travelers' admission that Culbreath's lawsuits against the homeowners qualified as wrongful acts under the Policy, we find that the losses attributable thereto must be covered under the Policy." (Doc 95 – Pg 7-8). This Court remanded the case for further proceedings consistent with its opinion (Doc 95 – Pg 8).

In that appeal, Travelers again argued "[r]efusal to *indemnify*, which is what happened here, does not implicate *Coblentz,* under which a Plaintiff must demonstrate coverage, a wrongful refusal to *defend*, and that the settlement was objectively reasonable." (Case 13-15414, Travelers Answer Brief -- Pg 50 of 59)(emphasis in original). This Court did not disagree.

10

D.    **Proceedings in district court following remand**

On remand, Plaintiffs moved for entry of judgment pursuant to the Eleventh Circuit's opinion finding coverage (Doc 99). The district court denied the motion and permitted the parties to file replies to the responses the parties had filed regarding the prior motions for summary judgment (Doc 107).

As noted above, the district court's November 5, 2013 summary judgment ruling did not identify any material issues of fact remaining as to Sidman or FP (Doc 85). In its opposition, Travelers argued the settlement amount was unreasonable and Buell lacked authority to enter into the agreement (Doc 103 − Pg 6-9, 11-15). However, these issues were never alleged as affirmative defenses by Travelers, and the district court had not identified them as issues of material fact remaining to be determined in its prior summary judgment ruling (Doc 86).

Nonetheless, Sidman addressed the amount, calculation and reasonableness of the settlement agreement at great length in her reply (Doc 120 – Pg 3-6, 14-18). Sidman argued the settlement was negotiated in good faith and was reasonable (Doc 120 – Pg 19-20). Sidman argued Buell had authority to enter the agreement on behalf of Kirkwood (Doc 120 − Pg 11-12).

On June 23, 2015, the trial court denied both parties' motions for summary judgment. As to Sidman and FP, the district court held genuine issues of material fact still in dispute regarding: (2) whether the settlement entered into between

11

Kirkwood and Culbreath is invalid because Kirkwood did not give her consent.[3]
(Doc 122 – Pg 3).  The district court's order did not mention *Coblentz* or any issue
of reasonableness and good faith in the settlement agreement (Doc 122).

Prior to the start of trial, on July 22, 2015, Plaintiffs moved for enforcement
of the court's orders (Doc 135).  This motion was precipitated by receipt of
subpoenas and e-mails from Travelers' counsel indicating it might be trying to
argue additional issues, such as the amount of attorneys' fees (Doc 135-1, Doc
135-2, Doc 135-4, Doc 135-5).  Specifically, the motion requested the district
court to direct that witnesses and exhibits be limited to those identified in the
parties' Joint Pretrial Statement and to "limit the issues at trial to those identified
in the Court's June 23, 2015 Order." (Doc 135 – Pg 6).  The same day, the district
court held that after due and careful consideration of the procedural history of this
case, it denied Plaintiffs' motion to enforce as **unnecessary** (Doc 136 – Pg
1)(emphasis added).

On August 11, 2015, the bench trial in this matter commenced (Doc 166),
and as to Sidman and FP, on the one issue identified by the court - Kirkwood's
consent to the Settlement Agreement.

---

[3] The issues identified in subsections: (1) whether alleged misrepresentations on
the 2010 renewal application render the Policy void ab initio; and (3) whether any
coverage exists for the Lewis claim in light of the allegations that Culbreath did
not comply with the notice provision in the Policy, were relevant only to the Lewis
claim.

E.    **Bench trial on issue of Kirkwood's consent to settlement agreement**

The district court's order following the bench trial (the "Order") on appeal here, noted the cause was remanded by Eleventh Circuit Court of Appeals for further proceedings consistent with its "single-issue" ruling that the fee judgments in the underlying lawsuits against the homeowners qualified as "wrongful acts" and thus are covered under the Policy issued by Travelers to Culbreath (Doc 181 – Pg 1). The district court stated "the case was reopened for further proceedings to resolve the remaining issues of Travelers' defenses to coverage" and ultimately came before the district court for a nonjury trial. (Doc 181 − Pg 1-2).

The district court explained "[a]lthough the bench trial commenced regarding the issue of Kirkwood's consent to the Settlement Agreement raised in Travelers' motion for summary judgment, as well as the issue of whether the consent judgment entered pursuant to that agreement was void and thus not entitled to full faith and credit under 28 U.S.C. section 1738, the Court ultimately determined the settlement was a *Coblentz* Agreement, and the case would be analyzed as such." (Doc 181 – Pg 12).

The district court did not reverse, or even acknowledge, its prior inconsistent orders that limited the issue before the court to Kirkwood's "consent". Also, full faith and credit under 28 U.S.C. Section 1738 was not an issue prior to trial, but was injected by the district court at the end of the first day of trial, only to

13

be dismissed by the court at the end of trial (Doc 166 – Pg 135; Doc 164 – Pg 4).

After Sidman and FP had rested, Travelers moved for directed verdict.  The district court asked Travelers if this was a *Coblentz* agreement (Doc 164 − Pg 3-4).  Contrary to the position Travelers argued and maintained throughout the proceedings prior to trial, Travelers' counsel stated: "It is a *Coblentz* agreement" (Doc 163 – Pg 4).  For the first time during the course of the three-year coverage litigation, the district court stated it believed *Coblentz* applied, and asked Travelers' counsel what its burden was under *Coblentz* (Doc 164 − Pg 4, 6).

In its written order the district court stated the greater weight of the evidence demonstrated that the settlement agreement entered into by Culbreath and Buell & Elligett, P.A. ("B&E"), for the sum of $295,000 in attorney's fees for 350 hours of work (billed at $842 per hour) was not reasonable in amount and not reached in good faith.  It held that the Florida state court judgment entered pursuant to that settlement agreement will not be enforced against Travelers (Doc 181 – Pg 2-3).

###### F.    The district court's order

####### 1.    District court's factual findings within the post-trial order repeat facts from earlier summary judgment order.

Of the nine pages of background facts provided in the Order entered following the four-day bench trial, approximately five pages are a reproduction of the "facts" as stated within the district court's 2013 summary judgment order,

which was reversed by this court on March 5, 2015 (Doc 181 − Pg 3, 4, 6, 7, 10, 11; Doc 86 − Pg 4, 5, 6, 7, 8).

For example, within both the 2013 summary judgment order and the 2015 order following bench trial, the district court found "Kirkwood was represented by the B&E law firm, whose principal, Mark Buell ("Buell"), agreed to perform work on the case for $300 per hour." (Doc 86 – Pg 4; Doc 181 – Pg 3). Neither order includes reference to the remaining portion of the fee agreement where a success bonus, or alternative fee agreement, of $900 per hour was agreed to by Phyllis Kirkwood (Doc 67-20).

The trial court held in both the 2013 summary judgment order and the 2015 order that "by the terms of their Stipulation, Kirkwood gave up a definite executable judgment against Culbreath in exchange for a speculative claim against Travelers. Kirkwood relinquished the assured reimbursement of any fees she paid so that B & E could collect $295,000, fees that far exceeded what it billed. Along with the settlement, Culbreath, Kirkwood, and B&E executed a promissory note whereby Culbreath agreed to pay the latter two up to $50,000 (for "attorney's fees") plus interest depending on how much Kirkwood recovered from Travelers." (Doc 86 – Pg 6; Doc 181 – Pg 6-7).

These "facts" were Travelers' arguments, adopted by the district court, and are contrary to the evidentiary facts. A fee judgment against Culbreath could

have been appealed by Culbreath so Kirkwood was not giving up a "definite executable judgment."    Further, the underlying summary judgment against Travelers, upon which the fee judgment would have been based, was already on appeal at the Second District Court of Appeal.  The summary judgment against Culbreath could have been reversed, and then Kirkwood would not only have lost her right to obtain attorney's fees from Culbreath, but could have become liable to Culbreath for its attorney's fees, not to mention injunctive relief sought by Culbreath.  The settlement agreement in no way "relinquished the assured reimbursement of any fees she paid" as stated by the court in both orders.  The settlement agreement provided Kirkwood with reimbursement for the fees she had paid, along with the assurance she would not be responsible for Culbreath's fees and costs, or face an injunction.  And again, the district court ignored the contingency nature, and alternative fee rate, provided in the attorneys' fee agreement.

## 2.    The district court incorrectly failed to apply the "vouching in" doctrine.

The district court rejected Plaintiffs' "vouching in" argument.  The court noted that "Plaintiffs argued that Travelers, '[h]aving been made aware of the progression of the negotiations, having been given the opportunity to appear and defend, and having been provided with all of the material terms of the agreement, and having been given an opportunity to object…sat idly by, allowing the

settlement to be consummated,' is 'vouched in' and may not now contest enforcement of the agreement" (Doc 181 – Pg 20-21).

In response, the trial court said:

> The issues here – the reasonableness and good faith of the settlement – were plainly not litigated below.  The state court, at the behest of the parties and in derogation of Florida law, never held the required hearing on these *Coblentz* elements, and the mere entry of a consent judgment does not constitute 'litigation' of an issue.
> (Doc 181 – Pg 21).

However, the underlying lawsuit was not an action for insurance coverage and the state trial court did not enter an order pertaining to Travelers' liability. Plaintiffs argue below that there was no need or reason for the state court to hold a hearing on *Coblentz* elements.   This finding by the district court, that the underlying trial court should have made *Coblentz* determinations applicable to the insurers' liability, is in error.

### 3.    Kirkwood's attorney had authority to enter into settlement agreement on her behalf.

Kirkwood had repeatedly instructed Attorney Buell that she wanted the lawsuit filed by Culbreath against her to be dismissed, and for her attorney's fees to be paid (181, (Doc 151 – Plaintiff's Trial Exhibits 4, 10, 52).   Settlement negotiations were ongoing prior to Kirkwood's hospitalization.   The settlement achieved Kirkwood's requests.

However, the district court found it troubling that although Buell knew his

client was in the hospital, he took no affirmative steps to investigate and determine the nature and extent of the medical conditions which caused her hospitalization, even though he was negotiating the terms of a settlement agreement on behalf of Kirkwood with Culbreath (Doc 181 – Pg 8).  The trial court found that Buell would have been unable to secure Kirkwood's "clear and unequivocal consent" to the specific terms of the Culbreath settlement agreement in light of her mental incapacity during the relevant period when the attorneys were negotiating and finalizing the terms (Doc 181 – Pg 9).  No medical or mental health experts were called as witnesses at trial.

At the end of trial, Travelers argued Kirkwood gave up her "right to proceed against Culbreath, who she's been chasing for a long time."  (Doc 163 – Pg 11).  This misstates the underlying facts.  Culbreath had sued Kirkwood for injunctive relief regarding alleged violations of homeowners' association's restrictive covenants.  Culbreath was chasing Kirkwood, not the other way around.

The settlement entered into on behalf of Kirkwood resulted in a dismissal with prejudice of the action for injunctive relief that Culbreath had brought against her (Doc 67-14).  The settlement resulted in a judgment requiring a party other than Kirkwood to be responsible for her attorneys' fees, and the settlement amount utilized a lower hourly rate than the alternative hourly rate she had agreed to within her fee agreement with Buell & Elligett (Doc 67-15, Doc 151 – Plaintiffs'

Trial Exhibit 13). The settlement provided that she would be reimbursed for all of the attorney's fees she had previously paid in the underlying suit, regardless of the outcome of the coverage action (Doc 152 – Plaintiff's Trial Exhibit 114).

### 4. Kirkwood's guardian, Sidman, ratified the settlement agreement.

Although not necessarily relevant to the outcome, the district court also found Sidman has not ratified the settlement agreement.  Sidman, a childhood friend of Kirkwood's, sought to become Kirkwood's guardian in January of 2011, and hired attorney Peter Kelly to assist her in this regard (Doc 168 – Pg 112).  Sidman was appointed plenary guardian for Phyllis Kirkwood on February 17, 2011 (Doc 67-45 – Pg 4-5).  Sidman testified she relied upon the advice of Attorney Kelly in all legal matters relating to the guardianship (Doc 168 – Pg 152).  Sidman testified Attorney Buell never came to her and asked her to become the plaintiff in this coverage lawsuit (Doc 168 – Pg 152).

Sidman testified she had been aware of the underlying lawsuit regarding Kirkwood's lawn, and she knew that Kirkwood had hired Buell to represent her (Doc 168 – Pg 114, 141).  Sidman testified she knew the lawsuit by the homeowners' association against Kirkwood had been very upsetting to Kirkwood and Sidman believed Kirkwood would have wanted it taken care of (Doc 168 – Pg 158).  When questioned by Travelers about the allegations of the coverage complaint, Sidman testified "All I knew is there was a suit, Phyllis would have

19

wanted everything to be taken care of and her lawyers to be paid for.  You know, this is still legal mumbo-jumbo to me, but I understand the gist of it.  But I – I think she would have agreed – and I'm sitting here in her shoes.  She would have wanted her attorneys to be paid for."  (Doc 168 – Pg 165).

Sidman testified she relied upon her attorney, Mr. Kelly's, advice in requesting authorization from the probate court to continue this action on Kirkwood's behalf (Doc 168 – Pg 113).  Sidman filed a Petition for Authorization to Act on March 2, 2011 (Id., Doc 153 – Plaintiffs' Trial Exhibit 127).  The order granting Sidman authorization to act in this lawsuit was entered March 9, 2011 (Doc 168 – Pg 113; Doc 153 – Plaintiffs' Trial Exhibit 128).  Ms. Kirkwood died on December 24, 2012, at the age of 61 (Doc 168 – Pg 114; Doc 28-2).  On March 21, 2013, Sidman became the personal representative for Ms. Kirkwood's estate (Doc 168 – Pg 113; Doc 153 – Plaintiffs' Trial Exhibit 135).

The trial court rejected Sidman's position that her pursuit of this lawsuit ratified the underlying settlement agreement (Doc 181 – Pg 22).  The court found the "record before the Court indisputably reflects that she was completely unaware of the material circumstances informing [sic] the execution of the settlement agreement or the relevant events leading up to and culminating in the filing of this lawsuit and that she relied on the judgment of the lawyers without asking for particulars." (Doc 181 – Pg 22).  As discussed below, the Court did not explain

why it could disregard the legal effect of Sidman obtaining an order from the state judge to pursue this claim (Doc 181 – Pg 22).

However, despite this finding, the district court utilized Sidman's testimony to come to its conclusion that Kirkwood was mentally incapacitated during December of 2011 (Doc 181– Pg 9, fn 29). Accordingly, the district court must have believed that Sidman was aware of Kirkwood's physical condition at the end of December when the settlement agreement was signed.

The trial court stated "[w]hile Buell represented Kirkwood in the underlying action, he represents Sidman in the instant action." (Doc 181 – Pg 7). The trial court said it thought this represented a conflict of interest on Attorney Buell's part (Doc 164 − Pg 35-36). Sidman became Kirkwood's guardian and subsequent personal representative and, accordingly, she simply stepped into the pre-existing suit on behalf of Kirkwood. Buell then represented Sidman, acting on behalf of Kirkwood, as a plaintiff in the coverage suit. However, Sidman was represented by separate legal counsel, Peter Kelly, with regard to all guardianship and personal representative issues (Doc 168 – Pg 112-113). The district court did not appear to appreciate this distinction. There is no basis for finding any conflict of interest on Attorney Buell's part.

> **5.    The district court made multiple unsupported and irrelevant findings to support its conclusion that Travelers owes no indemnity to its insured.**

Travelers utilized unfounded, red-herring arguments to lead the district court into making incorrect findings and conclusions. With full knowledge that *Coblentz* did not apply (as evidenced by all of Travelers' previous assertions that it did not), at the end of trial, Travelers persuaded the district court this case should be analyzed under *Coblentz*.

As part of this analysis, the district court found that Travelers' conduct does not bear on the reasonableness and good faith of *Coblentz*. The court found "[w]hile Travelers acknowledges its coverage counsel was made aware of settlement talks between Culbreath and Kirkwood regarding attorney's fees, its position (and good faith belief at that time) was that any award of fees to the prevailing parties in the underlying action was not covered. Therefore, there was no reason for Travelers to participate in the negotiation of the settlement, attend any hearing on attorney's fees, advise Culbreath on how to proceed, or to even require any information about the particulars of the agreement (i.e. how the $295,000 amount was calculated." (Doc 181 – Pg 13).

The district court held Travelers' inaction can at most be characterized as a wrongful refusal to defend, meeting the second element of plaintiff's prima facie case to enforce the Coblentz agreement (Doc 181 – Pg 13).

The district court found Plaintiffs did not meet the prima facie burden of showing the third element of good faith and reasonableness (Doc 181 – Pg 15).

22

The district court's findings regarding these *Coblentz* elements, and why the findings are inaccurate, will be discussed in further detail below.

### (iii)   Statement of the Standard or Scope of Review

The Plaintiffs appreciate that Fed. R. Civ. P. 52(a)(6) provides fact findings of a trial judge may not be set aside on appeal unless they are clearly erroneous. Here, the facts as to the vouching in of Travelers and its express refusal to participate (its waiver) are undisputed. As discussed below, the district court's critical comments go to issues that are not relevant, and ignore undisputed pertinent evidence to the contrary.

This Court reviews de novo the district court's legal rulings, including its determinations of state law. *See Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). In this diversity case, Florida law controls.

## <u>SUMMARY OF THE ARGUMENT</u>

As this Court's prior opinion in this case holds, Travelers breached its obligations to its insured by denying coverage and refusing to defend it from the fee claims brought against its insured. Despite its wrongful refusal to defend, Travelers was kept informed of its insured's negotiations to settle Kirkwood's fee claim, and invited to participate in the hearing that would determine the amount. It expressly declined, not changing its professed disinterest when it knew the exact

amount the parties intended to resolve the claim for.

Travelers could have participated under a reservation of rights while maintaining its coverage position, but it did not. Travelers has now been rewarded for breaching its contract and abandoning its insured.

The district court's 2015 order reaches the same result as its 2013 order, which this Court had reversed. In reaching that result, the district court failed to follow the law of Florida and this Court on Travelers' obligation when Travelers was vouched in, refused to honor it obligation, and waived its right to participate in the setting of the amount of the fee judgment. Standing alone, Florida vouching in law mandates that Travelers is liable. The Plaintiffs were also entitled to prevail as a matter of law on independent grounds, including the district court's failure to recognize that Sidman, as a matter of law, ratified the settlement. This ratification destroyed the lack of consent claim – the issue the district court repeatedly said was the only issue left to try.

## **ARGUMENT**

## **THE TRIAL COURT ERRED IN DETERMINING THE DECEMBER 28, 2010 CONSENT FINAL JUDGMENT COULD NOT BE ENFORCED AGAINST TRAVELERS.**

### A.    Overview:  The District Court's Changes In Position Lead to the Same Result As Its Reversed Summary Judgment

In its March 5, 2015 Opinion reversing summary judgment for Travelers, this Court stated that the question before the district court and this Court was

24

whether an insurance policy issued by Travelers "indemnified" Culbreath Isles for its liability for attorney's fees awarded to individuals it unsuccessfully sued. Finding that the lawsuits Culbreath initiated against the homeowners were wrongful acts under the policy, this Court found that the resulting statutory prevailing party attorney's fees must also be covered under the policy, reversed the district court's judgment in favor of Travelers and remanded the case for proceedings consistent with the Court's Opinion.

On remand, the district court concluded that one issue remained to be determined relevant to Sidman and FP. That was whether Phyllis Kirkwood "consented" to the December 23, 2010 settlement, which resulted in the December 28, 2010 Consent Judgment. FP and Sidman objected to the issue being tried when trial commenced, as the issue had not been raised in any pleading by any party, was not disclosed in any Rule 26 Disclosure or supplement, and had only been raised in Travelers' Motion for Summary Judgment.[4]  (Doc 166 – Pg 6-7)  The district court overruled the objection and determined that it was Plaintiffs' burden to establish the validity of the Agreement (Doc 166 – Pg 8-9).

At the conclusion of the evidence, after Sidman and FP had rested, the district court determined that the case was to be analyzed as a *Coblentz* agreement.

---

[4] They also objected on the basis that Travelers, as a non-party to the Agreement, did not have standing to attack Kirkwood's consent. The district court also overruled their objection in that regard.

The district court reached this conclusion despite Travelers' repeated pre-trial representations, both to the district court and this Court, that *Coblentz* principles had no application to the case. Thereafter, the district court issued its 23-page Order, concluding that the Plaintiffs had not met their burden of proof under *Coblentz*, that Travelers' conduct did not bear on the issue of reasonableness of the amount or terms of the settlement, and that longstanding principles of Florida indemnity law had no bearing on resolution of this indemnity case. Most respectfully, the district court misapplied Florida law and reached an erroneous resolution of this case. This Court should reverse the judgment with directions on remand to enter judgment for Sidman and FP as a matter of law.

### B.    Common Law Indemnity in Florida and the Importance of What and When the Indemnitor Knows About the Claim

The concept of indemnity in Florida is straightforward. Indemnity is a right which inures to a person who has discharged a duty owed by him but which, as between himself and another, should have been discharged by the other. *Stuart v. Hertz Corporation*, 351 So. 2d 703 (Fla. 1977). A contract for indemnity is merely an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party. *Dade County School Board v. Radio Station WQVA*, 731 So. 2d 638 (Fla. 1999).

Florida law regarding recovery for indemnification is likewise straightforward. The evidentiary burdens of the party seeking indemnification are

26

usually determined by notice − whether the indemnitor was provided notice of the claim against his indemnitee, and whether the indemnitor was afforded an opportunity to appear and defend.  Absence of notice to the indemnitor does not bar recovery; it simply alters the burden of proof.  The absence of notice imposes upon the indemnitee the necessity of litigating and establishing all of the actionable facts establishing his liability in his suit against the indemnitor.  *MacArthur v. Gaines*, 286 So. 2d 608, 610 (Fla. 3d DCA 1973).

However, "where an indemnitor has notice of suit against his indemnitee, and is afforded an opportunity to appear and defend, a judgment therein rendered against the indemnitee, if without fraud or collusion, is conclusive against the indemnitor as to all material questions therein determined."  *Id* at 610, citing *Grain Dealers Mut. Ins. Co. v. Quarrier,* 175 So.2d 83, 86 (1965).

The Florida Supreme Court quoted from *Grain Dealers*, this same language that the indemnitor with notice is bound by all material questions determined in the underlying judgment in *Jones v. Florida Ins. Guaranty Assoc. Inc.,* 908 So. 2d 435, 450 (Fla. 2005).  In *Jones*, the insured's insurer was declared insolvent and the Florida Insurance Guaranty Association (FIGA) became responsible for the claim. FIGA denied the claim was a covered claim and refused to provide a defense.  That resulted in a default judgment against the insured.  When the plaintiff pursued FIGA based on an assignment from the insured, FIGA argued there was no

coverage, and that it was not bound by the underlying judgment. The Florida Supreme Court rejected both positions – holding FIGA was bound by the judgment.

This common law indemnity notice concept is recognized in Florida as the doctrine of "Vouching In."   Florida courts have not limited application of the "Vouching In" rule to judgments, but have also applied it to settlements made by the indemnitee.  *Camp, Dresser & McKee, Inc. v. Paul N. Howard Company*, 853 So. 2d 1072, 1079 (Fla. 5th DCA 2003), citing *Continental Casualty Company v. Godur*, 476 So. 2d 242 (Fla. 3d DCA 1985); *Post Houses, Inc. v. Fireman's Fund Insurance Company*, 469 So. 2d 863 (Fla. 1st DCA 1985); *Atlantic Coast Development Corporation v. Napoleon Steele Contractors*, 385 So. 2d 676, 681 (Fla. 1980).  This Court has also acknowledged and applied Florida's "Vouching In" rule in diversity cases involving Florida indemnity law questions.  *See GAB Business Services, Inc. v. Syndicate 627*, 809 F. 2d 755, 760 (11th Cir. 1987); *Coquina Investments v. TD Bank, N.A.*, 760 F. 3d 1300 (11th Cir. 2014).

In *Camp, Dresser & McKee, Inc. v. Paul N. Howard Company*, 853 So. 2d 1072 (Fla. 5th DCA 2003), Florida's Fifth District Court of Appeal explained that this general rule of indemnity is premised on the concepts of estoppel and *res judicata*.   A judgment rendered in the main action establishes, for purposes of the indemnity action, all of the material facts litigated in that action.  Citing, *Hull*

& *Company v. McKetrick*, 414 So. 2d 243, 244 (Fla. 3d DCA 1982).  The *Camp, Dresser* court also explained that under one line of authority under Florida law, the judgment would have conclusive effect only upon the condition that the indemnitor had been given timely notice and an opportunity to appear and defend the action. *Id* at 1079.

Regarding application of the rule to settlements, the *Camp, Dresser* court explained that Florida courts generally agree that a party seeking indemnification must establish that the settlement was based on his "potential liability" to the plaintiff.  A showing of "potential liability" was required because the indemnitee must not be a mere volunteer who has settled the underlying claim, where there was no exposure to legal liability that obligated him or her to do so.  Only when the indemnitor was not given notice and an opportunity to assume responsibility for the claim was the settling indemnitee required to show that it was <u>actually</u> liable to the plaintiff.  That court concluded the threshold for "potential liability" was not high, nor should it be.

When notice had been given to the indemnitor, and the indemnitor elected not to act to protect himself, the court explained that he, in effect, consented to allow the indemnitee to act for him and would not be heard to complain about the outcome, except in the very limited circumstances where the indemnitee was not, in fact, at risk, but nevertheless paid money it would never have owed to the

plaintiff, citing, *Burke v. Ripp*, 619 F. 2d 354, 358 (5th Cir. 1980).

As shown above, the Florida Supreme Court held an indemnitor with notice and an opportunity to appear and defend is bound by a judgment against the indemnitee in its 2005 opinion in *Jones* - a case that involved a denial of insurance coverage.  *Jones* comes after this Court's discussion of these principles in *GAB Business Services, Inc. v. Syndicate 627*, 809 F. 2d 755, 760 (11th Cir. 1987).

In *GAB*, this Court recognized the Florida law cited above holding the "amount of settlement conclusive against indemnitor who 'has notice of suit against his indemnitee, and is afforded an opportunity to appear and defend.'"  fn 8.  Here, Travelers had that notice and was afforded the opportunity to defend – indeed, it had the duty to defend Culbreath, as this Court held.  *GAB* then said that because this law was from district courts and not the Florida Supreme Court, it would follow the decision in *Burke*. fn 8.  As noted, the Florida Supreme Court has now expressly adopted the holding of these district court opinions.  Thus, this Court now has controlling Florida Supreme Court authority to follow.

Plaintiffs also note that *Burke* did not discuss or purport to apply Florida law.  *Burke* alleged violations of Federal and Florida securities laws, so federal jurisdiction was apparently not based on diversity.  Indeed, *Burke* does not cite a

single Florida case.  It relies heavily on *Parfait*[5], a maritime case from Louisiana.
Consequently, *GAB's* suggestion that it was following Florida law in relying on
*Burke* was mistaken.  Travelers removed this case solely based on diversity
jurisdiction.

In sum, Florida law, including *Jones*, applies.  Travelers is bound by the
judgment because it had the opportunity (obligation) to defend and was fully
informed of the settlement.

The district court erred in concluding vouching in did not apply because the
good faith and reasonableness aspects of *Coblentz* were not litigated in state court
(Doc 181 – Pg 21).  This misses the point that Travelers had full notice of the
terms, and the opportunity to litigate the good faith and reasonableness of the fee
judgment, but expressly refused.  Because Travelers was vouched in and had the
opportunity to litigate those issues, it is bound by the judgment and cannot litigate
them in a second action.  *See Jones; MacArthur; Camp, Dresser.*

Further, while the district court criticized the good faith of Travelers'
insured and Kirkwood, it then made only a conclusory comment on collusion
between Sidman and Culbreath's attorneys to formulate an objectively
unreasonable attorney's fees settlement agreement (Doc 181 – Pg 22).  This
characterization as collusion was wrong as a matter of law.  First, there could not

---

[5] *Parfait v. Jahncke Service, Inc.*, 484 F. 2d 296, 304–305 (5th Cir. 1973), *cert. denied*, 415 U.S. 957, 94 S. Ct. 1485, 39 L. Ed. 2d 572 (1974).

be collusion where the settlement was not concealed from Travelers, who was kept informed.  Second, agreeing to a settlement figure that is to be paid exclusively to the claimant – and not shared with the insured – is not collusion under Florida law. Both these points are discussed further below.

### C.    *Coblentz* does not relieve Travelers of responsibility

As the parties all recognized (before Travelers changed its position) the settlement was not a typical *Coblentz* agreement.  Here, once Travelers refused to defend, it was continually informed of the settlement negotiations, and invited to participate in the proceedings to set the amount of the fee judgment.  Travelers expressly declined.  Even when it knew the amount, it did not object, it did not seek to participate.  It could, of course, have done so under a reservation of rights, preserving its (erroneous) denial of coverage.

In *Coblentz,* the insurer had originally appeared on behalf of an insured in the underlying tort action, but concluded it was not obligated to defend and withdrew its defense.  After the insured later settled with the claimant, the Fifth Circuit first considered Florida's case law regarding the obligation of an insurance company to defend its insured.  The court noted that the obligation was continuing in nature, that it arose and must be determined by the claims alleged by the pleadings in the suit, and not upon the insurer's evaluation of the ultimate liability in the case.  The court explained that, based upon the pleadings in the state court

case, it was clear American Surety was obligated to undertake the insured's defense. The court then stated:

> "Where either an indemnitor or liability insurer has notice of a proceeding against his indemnitee or insured, and is afforded an opportunity to appear and defend, a judgment rendered against the indemnitee or insured, in the absence of fraud or collusion, is conclusive against the indemnitor or insurer as to all material matters determined therein." *Id* at 1062-63.

The court then further explained that because American Surety had refused to handle the insured's defense, he was left to his own resources. The court noted it was certainly in the insured's best interest to consent to the entry of a judgment that could only be satisfied from liability insurance policies covering him at the time of the incident, rather than from his own personal assets.

Finding no Florida cases on point, the court relied upon a line of authority from Nebraska to reject American Surety's argument that the stipulated judgment did not obligate its insured to pay any funds and, as such, provisions in its policy would absolve it of any obligation to pay. The court explained that the provision in the policy could not apply because the insurance company had repudiated its defense obligation. Having abandoned its insured, it left the insured at liberty to take up the defense and contest the claim to final judgment, or, if so advised, make the most favorable settlement possible. The *Coblentz* court concluded by noting the record showed that the insured's lawyer had advised American Surety that he intended to pursue the procedure approved by the Nebraska court unless American

Surety chose to fulfill its obligation to defend the insured. The court explained that having elected to leave the insured to his own defenses, American Surety could not later complain about the form of the judgment. Citing to several treatises, the Court stated:

> "It is a well-settled principle that where a person is responsible over to another, either by operation of law or express contract, and he is duly notified of the pendency of the suit against the person to whom he is liable over, and full opportunity is afforded him to defend the action, the judgment, if obtained without fraud or collusion, will be conclusive against him whether he appeared or not." [citations omitted]

In short, *Coblentz* merely stands for the proposition that a liability insurer with notice of an action against its insured, who declines to defend, may be bound by a resulting consent judgment entered into in that action. Thus, it is consistent with the doctrine of "Vouching In"−the common law concept long recognized by Florida courts. Some cases since *Coblentz* have addressed situations where the insurer was not kept informed nor given the opportunity to participate. Those scenarios have resulted in opinions imposing additional standards. They are discussed below – but should have no application here because Travelers was informed and invited to participate. This case is controlled by *Jones*.

### D.    Notice and its Effect on Proof of Damages

The presence or absence of notice of a claim to an indemnitor not only affects the evidentiary burdens regarding the liability of the indemnitee. In Florida

indemnity law, it affects the burden of proof of the indemnitee's damages.  Under

Florida common law, as articulated by *Jones* and the district courts of appeal, the

amount of the settlement is conclusive against the indemnitor who has notice of the

suit against the indemnitee and is afforded an opportunity to appear and defend—

neither of which occurred here.  A showing of reasonableness is <u>only</u> required

when a settlement is entered into without notice or the indemnitor has not had an

opportunity to defend.  *See, Post Houses Inc., v. Fireman's Fund Ins. Co.*, 469 So.

2d 863, 864 (Fla. 1ˢᵗ DCA), *rev. den.*, 478 So. 2d 54 (Fla. 1985); *Atlantic Coast

Devel. Corp. v. Napoleon Steel Contractors, Inc.,* 385 So. 2d 676, 681 (Fla. 3d

DCA 1980); *MacArthur v. Gaines*, 286 So. 2d 608 (Fla. 3d DCA 1973); *see, also,

Gulf Group Holdings, Inc. v. Coast Asset Management Corp.*, 516 F. Supp. 2d

1253, 1262-63 (S.D. Fla. 2007).

    As discussed above, *GAB* did not have the benefit of *Jones*.  But even then,

*GAB* said a party seeking indemnification "could only recover so much of the

settlement as it proved was reasonable in amount."  809 F. 2d at 761.  Thus, under

*GAB*, Plaintiffs would be entitled to prove up the reasonable amount of fees.

    State and federal cases applying *Coblentz* have stated that an insurer will be

bound by the judgment if the insured or the plaintiff can establish: (1) the policy

imposed a duty on the insurer to indemnify the insured for the judgment; (2) that

the insurance company wrongfully refused to defend its insured in the underlying

35

action; and (3) the settlement was reasonable and made in good faith. *Stephens v. Mid-Continent Casualty Company*, 749 F. 3d 1318, 1321-22 (11th Cir. 2014); *Sinni v. Scottsdale Insurance Company*, 676 F. Supp. 2d 1319, 1324 (M.D. Fla. 2010); *Steil v. Fla. Physicians' Insurance Reciprocal*, 448 So. 2d 589, 582 (Fla. 2d DCA 1984); *Quintana v. Barad*, 528 So. 2d 1300, 1301 n.1 (Fla. 3d DCA 1988).

In *Mid-Continent Cas. Co. v. American Pride Building Co., LLC*, 534 Fed. App. 926 (11th Cir. 2013), this Court determined that in a *Coblentz* situation, a settlement may not be enforced against the insurer if it is unreasonable in amount *or* tainted by bad faith. As such, this Court held a jury that found the settlement amount was unreasonable could not later determine and award a reasonable amount to the indemnitee.

However, the Court's decision in *American Pride* does not address the line of indemnity cases culminating in the Florida Supreme Court's controlling decision in *Jones*, which stands for the proposition that the indemnitee is entitled to the amount of damages caused by the indemnitor's breach of duty without regard to a showing of reasonableness. Although the parties likely never apprised the Court of this line of cases for its consideration, the ruling appears to conflict with the rules stated in *GAB* and *Jones*. For this reason, Plaintiffs suggest, most respectfully, that even in cases where *Jones* does not apply, this Court should revisit the question of determining a reasonable amount. *See Mid-Continent Cas.*

*Co. v. Royal Crane, LLC*, 169 So.3d 174, 180, n. 2 (Fla. 4th DCA 2015)(identifying as an open issue "whether, in a *Coblentz* trial, the jury determines a reasonable settlement amount if it finds that the underlying settlement amount was unreasonable").

> **E.    Even if Florida Law Requires a Showing of Reasonableness, Travelers Waived Such a Requirement When Its Attorneys Stated That Travelers Would Not Be Contesting the Amount and Thereafter Acquiesced in the Settlement When All Material Terms of the Settlement Agreement Were Disclosed To It**

Neither Travelers nor the district court's order cites to any Florida Supreme Court decision standing for the legal proposition that an insurance company who breaches a duty to defend and indemnify stands in a superior position to any other indemnitor who breaches the same obligations. The undersigned attorneys have not been able to locate any such opinion. *Jones* establishes the insurer is to be treated as other indemnitors. Nevertheless, the district court determined at the outset of its decision that Travelers' own conduct did not bear on the issue of the reasonableness of the settlement or the good faith elements of the court's *Coblentz* analysis. The court also concluded that if it applied the "vouching in" case law, that the *Coblentz* arguments would be rendered superfluous, and thereafter rejected its application to this case. Most respectfully, the court was wrong on both counts.

As *Jones* and the other cited cases recognize, an indemnitor such as Travelers is not free to simply deny its indemnification obligation and then ignore

all communications regarding the matter that forms the basis of the indemnification claim without legal consequence. Rather, when an indemnitor has been provided information related to the negotiations of a proposed settlement, is apprised of the terms of the proposed settlement, has an opportunity to appear, object, approve or disapprove of the contemplated settlement, yet remains silent, the indemnitor is deemed to have waived any objections and acquiesced to the terms of the settlement and is therefore bound by it.[6]

For instance, in *Burke v. Ripp*, the district court granted summary judgment in favor of Reynolds Securities on a cross-claim for indemnification against Lawrence Ripp for amounts that Reynolds had paid in settlement of the suit against it. The issue before the court was whether, under the particular facts of the case, Reynolds was required to establish actual or merely potential liability to the original plaintiffs in order to recover on the indemnification claim. The Fifth Circuit determined that Reynolds needed to only demonstrate its potential liability under the particular facts of the case.

---

[6] Conduct of a party is certainly relevant to the issue of whether the party is "estopped" from asserting a position that it previously asserted. Estoppel exists where (1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated. *In Matter of Garfinkle*, 672 F. 2d 1340, 1347 (11th Cir. 1982) Silence or acquiescence may be sufficient conduct to create estoppel if under the circumstances there was both a duty and opportunity to speak. *Travelers Indemnity Co. v. Swanson*, 662 F. 2d 1098, 1102 (5th Cir. 1981) (Insurer estopped by its failure to communicate).

The parties submitted an agreed statement of case and facts to the court.  The underlying liability arose by virtue of two consolidated cases filed by two families who had purchased mortgages through Ripp while he was employed as an account executive for Reynolds and simultaneously as a solicitor for one or more mortgage brokers.  Reynolds' primary defense to the plaintiffs' claims was that Ripp sold the mortgages to them outside the scope of his employment with Reynolds and outside the scope of his actual and apparent authority.  After the complaints were served on Reynolds, it cross-claimed against Ripp for indemnity and for attorney's fees incurred in defending the suit brought by the original plaintiffs.  Ripp defended the claims brought by the plaintiffs, as well as the cross-claim by Reynolds, and was represented throughout the proceedings.

Reynolds settled with all plaintiffs, with the settlement occurring during the evening of the last day of trial.  Reynolds' counsel telephoned Ripp's attorney and advised him that a settlement in the agreed amount had been reached between Reynolds and the plaintiffs, but never sought his approval or participation.  Ripp's counsel never asked to participate, nor did he ever express approval or disapproval of the settlement or its amount.  On the following day, the parties appeared before the trial court, through their respective counsel, and announced on the record the terms of the settlement agreement.  Ripp's counsel was physically present in the courtroom at the time, yet stood silent and made no statements indicating either

approval or disapproval of the settlement.

After the settlement was announced, the trial was concluded. Reynolds then moved for summary judgment against Ripp on the amount of the settlement and Reynolds' attorney's fees, which the trial court granted.

On appeal, the Fifth Circuit commenced its analysis by identifying what it considered to be the most important factors it would rely upon in its analysis. Those factors were: (1) that counsel for Reynolds did not invite Ripp's counsel to participate in the settlement negotiations; (2) that counsel for Reynolds did keep Ripp's counsel advised at all times of the existence and progress of the settlement negotiations; (3) Ripp's attorney never expressed a desire to participate in the negotiations; (4) counsel for Reynolds informed Ripp's attorney of the settlement figure, but did not expressly seek his approval; (5) Ripp's counsel expressed neither approval nor disapproval when informed of the settlement, and also remained silent in the court on the following day when the terms of the settlement were dictated into the record; and (6) at no time did Reynolds tender the defense of the original action to Ripp.

After discussing the actual versus potential liability issue that the court had previously addressed in *Parfait*, *supra*. the court explained that its task was to determine whether the circumstances under which Reynolds settled the original claim were such that Ripp may, in fairness, be compelled to reimburse Reynolds

40

upon a demonstration of potential as opposed to actual liability. The Court stated that the district court judge had found that Ripp was afforded a sufficient opportunity to approve or disapprove the contemplated settlement and, in effect, had acquiesced to the settlement terms by his silence. The Fifth Circuit agreed.

The Court noted that Ripp was advised, at all times, that settlement negotiations were being conducted. As in the present case, while the court had no way of knowing exactly what words were exchanged during the telephone conversations between the parties' respective counsel regarding the settlements, the court did know that Ripp's attorney was informed of the proposed settlement, and that he voiced no objection to it. The Court further explained that when the terms of the settlement were dictated into the record on the following day, Ripp's counsel, although present, remained silent.

At the time, Ripp's attorney explained his silence as being based upon the need for more time to "think it over." The Fifth Circuit dismissed such an excuse, and noted the Court did not believe it was unreasonable to expect an attorney in such a position to indicate in some way any hesitation or doubt he may have as to the propriety of the impending settlement. The court also explained that Ripp's unresponsiveness was neither explained nor justified by the fact that the claim and cross-claim against him had been severed from the main action. Such severance had no compromising effect on the notice afforded Ripp, and he was aware that the

41

settlement of the claim against Reynolds would substantially affect the adjudication of the cross-claim for indemnity.

The Court also noted that while it did not condone Reynolds' failure to expressly seek Ripp's approval of the settlement, it nevertheless concluded, as it had done previously in *Parfait*, that the omission was not serious under the totality of the circumstances. The Court concluded that under the totality of the circumstances presented, Ripp was adequately protected by his continuing notice of the progress of the negotiations, his opportunity to approve or disapprove the settlement, and his apparent acquiescence in its terms. *See, also, Coquina Investments v. TD Bank, N.A.*, 760 F. 3d 1300, 1316-1317 (11th Cir. 2014) (Where indemnitor's attorney was apprised of proposed settlement terms, appeared at settlement hearing and did not oppose notwithstanding opportunities to do so, indemnitor found to have received adequate protection during settlement negotiations.)

In this case, Travelers was put on notice of the claims for attorney's fees in 2009. It breached its contractual obligation to defend no later than August 2010, when the hearing on Kirkwood's motion for entitlement to attorney's fees occurred. Although the evidence is undisputed that Travelers sent Culbreath's attorney, Frank Friscia, an email in early August 2010 advising him that it was denying coverage (indemnification and a defense), Friscia continued to inform

Travelers of the progression of the settlement discussions and negotiations occurring between Culbreath and Kirkwood's attorneys. Friscia continued to keep Travelers informed, even after it retained coverage counsel, Tramont, in late October of 2010, and Travelers' continued to be actively involved in negotiations in an attempt to resolve Kirkwood's fee claim, which was ultimately scheduled for a full evidentiary hearing on December 17, 2010. Approximately one month before the scheduled evidentiary fee hearing, Tramont emailed Kirkwood's attorney on November 17, 2010, representing he had no interest in attending the hearing as "… **there really is no reason for Travelers to participate in the evidentiary portion of the fee hearing which will merely set the amount. I don't think Travelers plans on challenging the amount** …" (Doc 67-41).

Having been apprised of the scheduled evidentiary hearing, having expressed no interest in attending it to protect its rights or those of its indemnitee, and having expressly stated it saw no reason to participate in the hearing and that it would not challenge the amount of the fees awarded, Travelers' conduct constituted a knowing waiver of any right to contest the amount of the fees as a matter of law.

But Travelers' conduct did not stop there. The uncontroverted testimony is that Tramont initiated a telephone conversation with Frank Friscia before the settlement was finalized, in which all of the material terms of the settlement

43

agreement, including the amount, were disclosed to Travelers. Like the attorney in *Ripp*, Travelers' counsel voiced no objection and took no action to defend Travelers or protect its interest. Instead, he remained silent. Relying upon the express waiver and acquiescence to the terms of the proposed agreement, Kirkwood and Culbreath cancelled the evidentiary hearing to determine the amount of fees.

Travelers admits it expressly waived its opportunity to challenge the amount of the attorney's fees and then acquiesced to the terms of the agreement when those terms were revealed to Travelers (Doc 178 – Pg 2). Travelers knew the pertinent terms of the settlement prior to execution of the settlement agreement, before the evidentiary hearing was cancelled, prior to the hearing which approved the settlement agreement, and prior to entry of the consent judgment. It responded by intentionally doing nothing. Travelers is estopped from challenging the terms of the settlement because it both waived any objections it may have had to the terms of the agreement and, thereafter, acquiesced to them such that the settlement may be deemed reasonable and made in good faith as a matter of law.

### F. Travelers Was Precluded From Arguing Defenses to the Underlying Action That Could Have Been Raised in the Underlying State Court Action

Travelers argued below, and the district court accepted, that the amount of the attorney's fee judgment consented to by the parties was unreasonable. When

an insurer refuses to defend, as this court has already concluded Travelers had done, it is later precluded as a matter of law from arguing defenses to the underlying action that its insured could have raised therein. *See, e.g., Jones,* 908 So. 2d at 450; *Category 5 Management Group, LLC v. Companion Property & Casualty Insurance Company*, 76 So. 3d 20, 24 (Fla. 1ˢᵗ DCA 2011) *rev. den'd*, 97 So. 3d 822 (Fla. 2012).

The underlying recovery against Culbreath Isles was premised upon a judicial determination that Culbreath Isles was obligated to pay Kirkwood a statutory fee. The Florida Supreme Court has adopted a Lodestar methodology for determining attorney's fees which are applicable when attorney's fees are awardable by statute, as in this case. *Standard Guarantee Insurance Company v. Quanstrom*, 555 So. 2d 828 (Fla. 1990). Calculation of such fee requires a determination of a reasonable hourly rate, a reasonable amount of attorney time spent, and then application and consideration of factors in Rule 4-1.5 of the Florida Bar Rules of Professional Conduct. The opponent has the burden of identifying with specificity any hours that should be deducted. *See, Centex-Rooney Construction Company, Inc. v. Martin County*, 725 So. 2d 1255 (Fla. 4ᵗʰ DCA 1999). After a determination of a reasonable hourly rate and the reasonable number of hours, the court is then, under the Florida formula, to consider application of a multiplier. The Florida Supreme Court has indicated that the

availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation. *Bell v. USB Acquisition Co. Inc.*, 734 So. 2d at 403, 411 (Fla. 1999).

In this case, Travelers' failure to defend Culbreath from Kirkwood's fee claim in the underlying state court action, and its express waiver of its right to challenge the amount, means that Travelers was prohibited from re-litigating those issues in this federal action. Nevertheless, the trial court erroneously allowed Travelers to re-litigate these issues from the state court action, notwithstanding its material breach of the obligation to defend, and the conclusiveness of those amounts as a result of that material breach, all the while citing *Coblentz*, whose holding prohibits that very thing.

Since the number of hours, a reasonable hourly rate and application of the multiplier were all issues that should have been determined at the circuit court level in the state court proceeding, Travelers was estopped as a matter of law from attempting to re-argue those matters before the district court. Likewise, the district court was precluded from allowing Travelers to re-litigate issues that were deemed conclusive as a result of Travelers' breach. This Court should reverse the judgment below with directions on remand to enter judgment in favor of Sidman and FP.

**G.    Travelers led the district court into error utilizing unsupported, red-herring arguments**

46

### 1. Buell had authority to enter into settlement agreement on behalf of Kirkwood.

The trial commenced on the issue of Kirkwood's "consent" to the settlement agreement as the only issue bearing on Travelers' liability. As discussed above, Travelers never alleged consent as an affirmative defense, this defense was waived, this issue is not relevant to Travelers' obligation, and Travelers has no standing to make this argument. *See Ferrara v. LCS Financial Services Corp.*, 2015 WL 84703 (M.D. Fla. 2015)(consent is an affirmative defense); *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000)(failure to plead an affirmative defense results in waiver of that defense); *Gallagher v. Dupont*, 918 So.2d 342, 347 (Fla. 5th DCA 2005)(settlement agreement is a private contract and insurer, as a non-party to the agreement, could not collaterally attack the terms of the agreement).

The district court failed to appreciate that a nonparty to a contract (like Travelers) may be able to argue about the effect of the terms of a contract (as this Court addressed in *Yellow Pages Photos, Inc. v. Ziplocal, L.P.,* 795 F.3d 1255, (11th Cir. 2015)). But that is a different issue from a non-party to the agreement trying to challenge the ability of a party to enter into the agreement itself. As a stranger to the agreement, Travelers cannot do that. *Gallagher, supra; K-Mart Corp. v. State Dept. of Transp.*, 636 So.2d 131, 133 (Fla. 2d DCA 1994).

Nonetheless, Sidman will address Buell's authority to enter the agreement on behalf of Kirkwood.

At the time Kirkwood entered the hospital, settlement negotiations were ongoing and were based upon Kirkwood's straightforward demands - for the suit against her to be dismissed with prejudice and for her attorney's fees to be paid. Although Kirkwood was in the hospital at the conclusion of the settlement negotiations, Buell acted within his authority from Kirkwood in resolving the dispute – with the result that the lawsuit against her was dismissed and Kirkwood would not be liable for any attorneys' fees.  The settlement amount agreed upon, to be paid by Travelers or Culbreath (not Kirkwood), and utilized an hourly rate lower than the alternative rate Kirkwood had expressly agreed to within her fee agreement with Buell & Elligett.  Buell & Elligett had an obligation to resolve the suit against Kirkwood on the terms she had specified.  Had this opportunity been lost, the duty to its client would have been breached.

The authority to negotiate terms of a settlement agreement necessarily includes the authority to enter into a binding agreement.  *Vital Pharmaceutical, Inc. v. S.A.N. Nutrition Corp.*, 2007 WL 1655421, *5 (S.D. Fla. 2007).  That court held it is nonsensical to argue that the attorney had the authority to make certain offers to the opposing party on behalf of his client, but not to enter into a binding agreement.  *Id.*    Discussing a settlement similar to the one here, the *Vital*

*Pharmaceuticals* court emphasized "the resolution [the attorney] was able to negotiate is one that is both unusual and beneficial to his client: payment of a sizeable sum in attorney's fees for the Defendant by the Plaintiff and a dismissal of the action with prejudice." *Id*. at *5, n. 7.   *Vital Pharmaceuticals* held even where the client later disputed his attorney's authority to enter into this agreement (because the client later decided it wanted more of its fees paid by the plaintiff), the attorney had authority to enter the agreement, and it would be enforced by the court. *Id*. at *7.

Here the district court said that although Buell may have believed the settlement was what Kirkwood wanted, he did not have her clear and unequivocal authority to enter into the specific terms of the settlement agreement, citing *Ponce v. U-Haul Co. of Fla*., 979 So.2d 380, 382 (Fla. 4th DCA 2008)(Doc 181 – Pg 9). This case is inapplicable to the facts here.  *Ponce* involved a suit by an injured motorist against U-Haul. The injured motorist's attorney settled the dispute, and U-Haul sought to enforce the settlement.  The injured party argued his own attorney did not have authority to settle on his behalf.  The trial court held that an unauthorized compromise, unless subsequently ratified by the client, is of no effect and may be repudiated or ignored by the client.  979 So.2d at 382.

Here, there was no attempt by the client (now guardian/personal representative) to disavow the settlement. The opposite is true.  Sidman seeks to

enforce the agreement.  Only Travelers, a third party to the settlement agreement, seeks to have the agreement repudiated.  All of the cases cited by Travelers to support its position that Buell lacked "clear and unequivocal authority" involve cases where the *client* claimed his or her attorney acted without authority.  None involved situations where the client sought to enforce the agreement and the argued lack of authority was claimed by an entity outside the attorney/client relationship, such as an insurance company seeking to avoid its indemnity obligation.

### 2.    Sidman ratified the settlement agreement as a matter of law.

The law provides a mechanism to legally handle incapacity of a person – guardianships.  *See* Section 744.102(9), Fla.Stat. (a "guardian" is a person who has been appointed by the court to act on behalf of a ward's person or property).  Sidman, relying upon advice of independent counsel, sought authorization from the probate court to continue this action on Kirkwood's behalf (Doc 169 – Pg 113, Doc 153 – Plaintiffs' Trial Exhibit 127).  The state court order granting Sidman authorization to act in this lawsuit was entered March 9, 2011 (Doc 168 – Pg 113).  Sidman, Kirkwood's legal guardian, acted on behalf of Kirkwood and ratified the settlement agreement, as a matter of law. *See Owen v. Owen,* 376 So.2d 27 (Fla. App. 2 Dist. 1979); see also *University of Miami v. Wilson,* 948 So.2d 774 (Fla. App. 3 Dist. 2006).

All cases relied upon by Travelers to assert that Sidman did not ratify the agreement involved situations where the person who allegedly ratified some action argues that he or she did *not* do so.  (See, e.g. Doc 172 – Pg 39).  That is not the situation here.  By obtaining the March 9, 2011 state court order, Sidman ratified the agreement as a matter of law.  That is the end of the story.  No "sufficient" knowledge is required of her.  Nonetheless, even if such knowledge is required, Sidman established that she does have sufficient knowledge to ratify the agreement.

Sidman testified she had been aware of the underlying lawsuit regarding Kirkwood's lawn, and she knew that Kirkwood had hired Buell to represent her (Doc 168 – Pg 114, 141).  Sidman testified she knew the lawsuit by the homeowners' association against Kirkwood had been very upsetting to Kirkwood and Sidman believed Kirkwood would have wanted it taken care of (Doc 168 – Pg 158).  When questioned by Travelers about the allegations of the coverage complaint, Sidman testified that understands the gist of the lawsuit, she is sitting in Kirkwood's shoes, and she believes Kirkwood would have wanted her attorneys to be paid (Doc 168 – Pg 165).

The settlement agreement was ratified as a matter of law.

### 3.    The district court inappropriately utilized a *Coblentz* analysis, supported by illogical findings.

As shown above, the district court erred in using a *Coblentz* analysis and in

51

its purported legal application.  Beyond that, its purported factual bases were wrong.  The court cited from Travelers' post-trial brief in elaborating its reasons why the settlement was not objectively reasonable (Doc 181 – Pg 14-15).  Each of these reasons contains half-truths and illogical positions.

First, the district court found "the failure of the parties, contrary to Florida law, to hold an evidentiary hearing and obtain specific findings on the reasonableness of the award (which would have presumptively established the propriety of the amount awarded)" displays the settlement was not objectively reasonable (Doc 181 – Pg 14).

This contention miscomprehends Florida law.  Travelers argued that attorney's fee awards, where multipliers are involved, require specific findings of fact.  Sidman does not disagree that <u>contested</u> fee judgments require findings of fact.  However, judgments adopting settlement agreements are not required to include findings of fact, even where attorney's fees are involved.  There would be no "settlements" of attorneys' fee claims if evidentiary hearings with resultant findings of fact were required.  The cases addressing the need for findings for fee awards are in the context of a contested fee judgment – not a settlement.  According to Travelers' argument, adopted by the district court, the parties should have gone through a staged hearing to have the state judge make such findings.

Second, the district court held the insured's attorney testified he had never

seen an hourly rate that high awarded in such an action (Doc 181 – Pg 14). However, this finding ignores the remainder of his testimony that a simple hourly rate was not at issue here, that the underlying plaintiff had a contingency and alternative rate fee agreement, and that he believed the settlement amount was reasonable (Doc 168 – Pg 39, 44:23-25, 107-108).

Third, the district court improperly relied upon Culbreath's expert report prepared in the underlying dispute prior to the scheduled, but ultimately canceled, state court evidentiary hearing on attorneys' fees.  This affidavit of the fee expert was not listed as a trial exhibit in this coverage suit, and the expert was not listed as a trial witness.  The affidavit was admitted by the district court over objection by Plaintiffs (Doc 168 – Pg 50, Doc 153 – Defendant's Trial Exhibit 53).  The expert had opined that $400 was the upper limit of acceptable hourly rates for Kirkwood's attorneys' services (Doc 181 – Pg 14).  However, that expert was unaware the Kirkwood fee agreement was contingent, and he had not been provided all of Kirkwood's counsel's time records.

The district court found that because Culbreath was prepared to use this expert at the evidentiary hearing on fees, Culbreath ceased acting as a reasonable insured when it agreed to a settlement amount higher than the amount its expert was prepared to present (Doc 181 – Pg 16-17).  First, it assumes a party could never seek to mitigate the risk of losing a hearing by agreeing to a number greater

than it hoped for, but less than the opposing party was going to present evidence to support (Sidman's expert was prepared to testify to a $400,000 fee). Second, it ignores the risks: when Culbreath's expert later testified in the Lewis fee hearing, his opinions were rejected (Doc 168 – Pg 252). The district court's standard here is essentially any settlement agreement which varies from the position the party was prepared to argue at trial is unreasonable.

Fourth, the district court found "Plaintiffs misplaced reliance on *First Baptist Church of Cape Coral, Fla. Inc. v. Compass Constr., Inc.*, 115 So.3d 978 (Fla. 2013), to argue that alternative fee arrangements where a party is awarded more if it collects from the losing party than if it paid its fees itself are authorized in Florida" shows unreasonableness. In support of this finding, the district court held the party seeking to recover fees was required to justify its award to a trial court. Plaintiffs agree they would have been required to support their claim had it not settled, and Plaintiffs had hired an expert to testify as to the reasonableness of the fee award at the scheduled evidentiary hearing. However, that the fee amount resolved in a settlement does not somehow make the arrangement patently unreasonable.

One of the cases cited by the district court expressly found reasonableness in the application of a multiplier and a resulting similar fee. *TRG Columbus Dev. Venture, Ltd. v. Sifontes*, 163 So.3d 548, 552 (Fla. 3d DCA 2015)(Doc 181 − Pg

15, fn 38), applied a contingency fee agreement, which contained an alternative fee recovery clause, and found $400 per hour to be a reasonable hourly rate, and affirmed the application of a 2.0 multiplier, or $800 per hour.

Fifth, the district court cited what it believed to be the "inherent lack of credibility of Friscia and Buell's testimony and affidavits (the only evidence Plaintiffs offered to support the reasonableness of the $295,000 fee)" to support its finding (Doc 181 – Pg 15).   Again, prior to trial, the district court held only consent would be at issue and, accordingly, Plaintiffs had not prepared to present expert testimony as to the reasonableness of attorneys' fees.   Reasonableness was not announced by the court as an issue in the suit until after the close of Sidman and FP's evidence.   In addition to being simply unfair, this ignored the undisputed evidence that the Lewises had spent $274,000 in fees in the litigation, that Kirkwood's expert was prepared to testify to a $400,000 fee, and that the opinions of the expert Culbreath had hoped to rely on were ineffective at the contested Lewis hearing on fees (Doc 170 – Pg 252, Doc 67-25 – Pg 28).

### 4.    The district court's conclusory statement of collusion is wrong.

The district court stated "Buell, acting on behalf of B & E, and in collusion with Culbreath's attorney, Friscia, formulated an objectively unreasonable attorney's fees' settlement" (Doc 181 – Pg 22).

"Collusion" in the context of insurance indemnity means an agreement

55

where the plaintiffs agree to share the recovery with the insured. *See Chomat v. N. Insurance Company of New York*, 919 So.2d 535, 538 (Fla. 3d DCA 2006). It was never alleged or implied that such an agreement existed here.

Webster's New World Dictionary, 3d College Ed., defines "collusion" as "a secret agreement for fraudulent or illegal purpose; conspiracy." Travelers does not deny it was kept continually apprised of the negotiations and was expressly informed of the resultant terms prior to the entry of the agreement. There was no secrecy.

The district court appears to equate the simple act of negotiating and settling a dispute with "collusion." This was wrong. The judicial system encourages parties to settle their disputes to mitigate expense and burden upon the court. *See Robbie v. City of Miami*, 469 So.2d 1384 (Fla. 1985)(settlements are highly favored and will be enforced whenever possible).

## CONCLUSION

Only after Travelers refused to defend, after entry of the trial court's order obligating Culbreath to pay Kirkwood's fees, after Travelers received notice of the scheduled evidentiary hearing on the amount of fees, after Travelers informed Kirkwood's attorney that Travelers would not attend the evidentiary hearing on the amount of fees, after Travelers advised that it did not plan on challenging the amount of the fees, after Travelers was informed of the terms and amount of the

settlement agreement, and after Travelers did not object or instruct Culbreath not to enter into the agreement - did Culbreath then enter into the settlement agreement under the terms previously disclosed to Travelers. Travelers acquiesced to the terms of the agreement and waived its right to later argue lack of reasonableness and good faith.

Travelers has led the district court into an inappropriate finding that: because the underlying defendant (Kirkwood) was in the hospital at the time the settlement agreement was executed, the insurance company is relieved of its obligation to its insured (Culbreath), the underlying plaintiff. The relationship between the party to whom the insured is liable (Kirkwood) and that party's attorney is irrelevant to the insurance company's obligation to its insured (Culbreath). But even if it were, Kirkwood's attorney acted with authority, and in his client's best interests, in settling the dispute in the manner it was resolved in the settlement agreement.

The district court reached the same result in the trial that it reached in entering summary judgment. The court has relied upon varying legal bases to support this conclusion and, ultimately, incorrectly applied *Coblentz* elements to support its finding that Travelers owes no duty to indemnify. After refusing to defend its insured, Travelers was informed of the terms of the settlement agreement, including the amount, and made the affirmative decision not to object

and to do nothing.   The district court's decision below rewards Travelers for repeatedly breaching its contract and its obligations to its insured.

Respectfully submitted,

<table>
<tr><td><em>s/ Raymond T. Elligett, Jr.</em></td><td><em>s/ George A. Vaka</em></td></tr>
<tr><td>Raymond T. Elligett, Jr., Esq.</td><td>George A. Vaka, Esq.</td></tr>
<tr><td>Florida Bar No. 261939</td><td>Florida Bar No.</td></tr>
<tr><td>elligett@belawtampa.com</td><td>gvaka@vakalaw.com</td></tr>
<tr><td>Mark P. Buell, Esq.</td><td>Nancy A. Lauten, Esq.</td></tr>
<tr><td>Florida Bar No. 217603</td><td>Florida Bar No.</td></tr>
<tr><td>buell@belawtampa.com</td><td>nlauten@vakalaw.com</td></tr>
<tr><td>Buell & Elligett, P.A.</td><td>Vaka Law Group, P.L.</td></tr>
<tr><td>3003 W. Azeele Street, Ste. 100</td><td>777 S. Harbour Island Blvd., Ste. 300</td></tr>
<tr><td>Tampa, Florida 33609</td><td>Tampa, FL 33602</td></tr>
<tr><td>(813) 874-2600</td><td>(813) 549-1799</td></tr>
<tr><td>Attorneys for Appellant Orline M. Sidman</td><td>Attorneys for Florida Policyholders</td></tr>
</table>

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).  This brief contains 13,686 words.

<em>s/ Raymond T. Elligett, Jr.</em>        <em>s/ George A. Vaka</em>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 29, 2016, I electronically filed the foregoing with the Clerk of the Court by using the ECF system, which will send a notice of electronic filing via email to the following counsel of record:

Andrew V. Tramont, Jr., Esq.
Bradley B. Aserlind, Esq.
Rodriguez Tramont Guerra & Nunez, PA
255 Alhambra Circle, Suite 1150
Coral Gable, FL 33134

Joseph T. Kissane
Cole, Scott, & Kissane
4686 Sunbeam Road
Jacksonville, FL  32257

_s/ Raymond T. Elligett, Jr._          _s/ George A. Vaka_