CASE NO:   15-15197-GG
IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

_____

ORLINE SIDMAN, et al.,

Appellants,

vs.

TRAVELERS CASUALTY AND SURETY,

Appellee.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

Honorable Richard A. Lazzara

_____

**APPENDIX
VOLUME II**

_____

Raymond T. Elligett, Jr., Esq.
Mark P. Buell, Esq.
Buell & Elligett, P.A.
3003 W. Azeele Street, Suite 100
Tampa, Florida   33609
(813) 874-2600
Attorneys for Appellant Orline M. Sidman

George A. Vaka, Esq.
Nancy A. Lauten, Esq.
Vaka Law Group, P.L.
777 S. Harbour Island Blvd., Suite 300
Tampa, FL   33602
(813) 549-1799
Attorneys for Florida Policyholders

## INDEX OF APPENDIX

**VOLUME I**                                                    Docket/Tab #

District Court Docket Sheet ................................................................. i

Complaint (filed in State Court) ......................................................... 2

Travelers' Answer and Affirmative Defenses ................................. 8

Amended Complaint ............................................................................ 16

Travelers' Answer and Affirmative Defenses
   to Amended Complaint .................................................................. 23

Second Amended Complaint ............................................................. 31

Travelers' Answer and Affirmative Defenses
   to Second Amended Complaint ................................................... 36

Travelers' Amended Answer and Affirmative Defenses
   to Second Amended Complaint ................................................... 37

Travelers' Second Amended Answer and Affirmative Defenses
   to Second Amended Complaint ................................................... 50

Joint Stipulation and Agreement (Exhibit 14 to Sidman's Motion
   for Summary Judgment) ................................................................ 67-14

Email dated November 17, 2010, from Andrew Tramont to Mark Buell
   (Exhibit 41 to Sidman's Motion for Summary Judgment) ..... 67-41

Affidavit of Orline M. Sidman (Exhibit 45 to Sidman's
   Motion for Summary Judgment) ................................................. 67-45

Order Granting Defendant Travelers' Motion for Summary Judgment ........ 86

Certificate of Service

## INDEX OF APPENDIX

**VOLUME II**                                                    Docket/Tab #

Opinion/Order of USCA ................................................................................. 95

Motion for Miscellaneous Relief, Specifically Enforcing the
 Court's Previous Orders, Confining Travelers' Witnesses and
 Exhibits to Those Identified in the Joint Pretrial Statement, and
 Limiting the Issue at Trial to Those Identified in the Court's
 June 23, 2015 Order ................................................................................. 135

Order Denying as Unnecessary Plaintiffs' Motion to Enforce ................ 136

Petition for Authorization to Act (Plaintiffs' Trial Exhibit 127,
 admitted into evidence on August 13, 2015, at Docket Entry 153;
 identified and marked as admitted on Plaintiffs' Exhibit List at
 Docket Entry 160, p. 12, and Trial Transcript Vol. 3, Docket
 Entry 168 at p. 112-114) ........................................................................ 153a

Order Granting Petition for Authorization to Act (Plaintiffs' Trial
 Exhibit 128, admitted into evidence on August 13, 2015, at
 Docket Entry 153; identified and marked as admitted on
 Plaintiffs' Exhibit List at Docket Entry 160, p. 12, and Trial
 Transcript Vol. 3, Docket Entry 168 at p. 113-114) ......................... 153b

Excerpt of Transcript of Bench Trial (Volume 3), p. 9-12 ................... 168

Travelers' Response to Plaintiffs' Post Trial Brief, p. 2, 3, and 6 ........ 178

Order Directing Clerk to Enter Judgment in Favor of Travelers .......... 181

Certificate of Service

95

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15414

_____

D.C. Docket No. 8:12-cv-02928-RAL-EAJ

CULBREATH ISLES PROPERTY OWNERS ASSOCIATION, INC.,
ORLINE M. SIDMAN,
FLORIDA POLICYHOLDERS, LLC,

Plaintiffs-Appellants,

versus

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(March 5, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and WALTER,[*] District Judge.

WALTER, District Judge:

This appeal follows the district court's grant of summary judgment in favor of Defendant-Appellee Travelers Casualty & Surety Company of America ("Travelers"). On cross-motions for summary judgment, the question before the district court was whether an insurance policy issued by Travelers to Plaintiff-Appellant Culbreath Isles Property Owners Association, Inc. ("Culbreath") indemnified Culbreath for its liability for attorney's fees incurred by, and awarded to, individuals who Culbreath unsuccessfully sued. This Court is asked the same question on appeal. Following a review of the record and with the benefit of oral argument, we REVERSE the district court and REMAND for further proceedings consistent with this opinion.

## I.    BACKGROUND

### a. The Policy

The relevant insurance policy was a Non-Profit Management and Organization Liability Policy ("the Policy") issued by Travelers to Culbreath for the period of February 20, 2009 to February 20, 2010. In pertinent part, the Policy

---

[*] Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

provides "Liability Coverage" such that:

> [t]he Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in item three of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

The Policy also defines the following terms:

A "Wrongful Act" is:

> any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured Organization or by one or more Insured Persons, individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices.

"Claim" (as defined by the Policy and modified by the Endorsement) means:

> 1)      a written demand for monetary or non-monetary relief;
> 2)      a civil proceeding commenced by the service of a complaint or similar pleading;
> 3)      a criminal proceeding commenced by a return of an indictment; or
> 4)      a formal administrative or regulatory proceeding commenced by the  filing of a notice of charges, formal investigative order or similar document,
> against an Insured for a Wrongful Act, including an appeal therefrom.

And, finally, the Policy defines "Loss" as:

> the total amount . . . which any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but limited to, damages (including punitive or exemplary damages where insurable under applicable law), judgments, settlements and Defense Costs . . . .

**b. Facts**

The relevant facts are not in dispute, and the parties agreed at the district court level that this matter was ripe for resolution through summary judgment proceedings.

Culbreath functions as a homeowners' association. In October 2008, Culbreath filed two separate lawsuits in Florida's Thirteenth Judicial Circuit Court against property owners, Phyllis Kirkwood and Nancy and Richard Lewis, alleging violations of Culbreath's bylaws. Culbreath initiated both lawsuits pursuant to section 720.305, Florida Statutes, which contains a "prevailing party" attorney's fee provision.[1] Culbreath was unsuccessful in each of the lawsuits, which resulted in fee judgments against Culbreath for the amount of fees incurred by the homeowners in defending the lawsuits. Pursuant to the Policy, Culbreath sought coverage for its liability for the fee judgments, which Travelers denied.

---

[1] Chapter 720 of Florida Statutes governs actions at law and/or in equity to redress alleged failures or refusals to comply with the provisions of Chapter 720 or the governing documents of the community, whether the action is brought by the association or by any member against those listed in section 720.305(1)(a)-(d). That section further provides that "[t]he prevailing party in any such litigation is entitled to recover reasonable attorney's fees and costs." Fla. Stat. § 720.305(1).

## II.     STANDARD OF REVIEW

"This Court reviews the granting of summary judgment de novo, applying

the same legal standards which bound the district court." Whatley v. CNA Ins.

Companies, 189 F.3d 1310, 1313 (11th Cir. 1999). Because federal jurisdiction

over this matter is based on diversity, Florida law governs the determination of the

issues on appeal. Davis v. National Medical Enterprises, Inc., 253 F.3d 1314, 1319

n. 6 (11th Cir. 2001). In insurance coverage cases under Florida law, courts look at

the insurance policy "as a whole and give every provision its full meaning and

operative effect." Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1186

(11th Cir. 2002) (citing Dahl–Eimers v. Mutual of Omaha Life Ins. Co., 986 F.2d

1379, 1381 (11th Cir. 1993) and Excelsior Ins. Co. v. Pomona Park Bar & Package

Store, 369 So.2d 938, 941 (Fla. 1979)).

## III.    DISCUSSION

Appellants are Culbreath, Orline M. Sidman, and Florida Policyholders,

LLC.[2] For purposes of this appeal, the appellants' positions are in alignment;

therefore, for ease of discussion, we will hereinafter refer only to Culbreath as

---

[2] Sidman is the personal representative of the estate of Phyllis Kirkwood. Florida Policyholders, LLC was formed by Kirkwood's former lawyers, two principals of the law firm Buell & Elligett, P.A., who represented Kirkwood in the lawsuit brought against Kirkwood by Culbreath. Once the Kirkwood fee judgment was issued against Culbreath, Culbreath assigned its rights against Travelers to Kirkwood and her lawyers, Buell & Elligett, P.A. The lawyers, in turn, assigned their rights against Travelers to Florida Policyholders, LLC.

representative of all appellants.

In Florida, insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So.2d 29, 34 (Fla. 2000). It is undisputed that the Policy at issue was broadly drafted, specifically in its definitions of the terms "wrongful act" and "loss." Indeed, counsel for Travelers specifically conceded at oral argument that the definition of "wrongful act" was broadly drafted. Culbreath contends that the underlying suits filed by Culbreath were wrongful acts committed *by* Culbreath, the insured; those wrongful acts led to the homeowners' claims for attorneys' fees and costs *against* the insured; and those claims led to losses - the fee and cost judgments - which should be covered under the plain language of the Policy. Travelers' representative Melissa Morin admitted that the lawsuits brought by Culbreath against the homeowners were "wrongful acts" under the Policy. Although Travelers likely never intended to provide the type of coverage sought by Culbreath, Culbreath is correct that both the plain language of the Policy and Travelers' admissions require that conclusion.

In this case, the loss at issue arose from the homeowners' liability for the attorneys' fees incurred in defending the unsuccessful lawsuits brought by Culbreath. The language of the Policy provides liability coverage "on behalf of the

Insureds Loss . . . which is incurred by the Insureds as the result of any Claim first made against the Insureds during the Policy Period . . . for a Wrongful Act." A wrongful act is defined by the Policy as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty" committed by any insured party. The plain language of the Policy was drafted broadly, thereby allowing each of the instant lawsuits to qualify as "any error . . . or act" of the insured. As mentioned, Travelers' representative Melissa Morin admitted that the lawsuits brought by Culbreath were, in fact, "wrongful acts" under the Policy. Once Travelers conceded this point, it could no longer form a plausible argument that the fee judgments at issue were not covered under the Policy. A claim, as defined by the Policy and endorsement thereto, includes "a written demand for monetary or non-monetary relief . . . against an Insured for a Wrongful Act[.]" Clearly, a plain reading of the Policy mandates inclusion of the fee judgments as written demands for monetary relief. Again, Morin stipulated that such claims had been made against Culbreath as a result of the lawsuits initiated by Culbreath. And, finally, the Policy's broad definition of loss is satisfied by Culbreath's legal obligation to pay the homeowners' attorneys' fees as a result of Culbreath's decision to pursue lawsuits against the homeowners under section 720.305. Accordingly, based on Travelers' admission that Culbreath's lawsuits against the homeowners qualified as

wrongful acts under the Policy, we find that the losses attributable thereto must be covered under the Policy.

## IV.   CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment in favor of Travelers and **REMAND** for further proceedings consistent with this opinion.

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Amy C. Nerenberg
Acting Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 05, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 13-15414-FF
Case Style: Culbreath Isles Property Owner v. Travelers Casualty and Surety
District Court Docket No: 8:12-cv-02928-RAL-EAJ

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellee.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

AMY C. NERENBERG, Acting Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs

135

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CULBREATH ISLES PROPERTY
OWNERS ASSOCIATION, INC.,
ORLINE M. SIDMAN, AND
FLORIDA POLICYHOLDERS, LLC,

     Plaintiffs,

v.                              Case Number:  8:12-cv-02928-RAL-EAJ

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

     Defendant.
_____/

**PLAINTIFFS', CULBREATH ISLES PROPERTY OWNERS ASSOCIATION, INC.,
ORLINE M. SIDMAN, AND FLORIDA POLICYHOLDERS, LLC, AMENDED
CORRECTED MOTION TO ENFORCE JUNE 23, 2015 ORDER, NOVEMBER 4, 2013
PRETRIAL STATEMENT, FEBRUARY 28, 2013 CASE MANAGEMENT &
SCHEDULING ORDER, AND FEBRUARY 26, 2013 CASE MANAGEMENT REPORT**

Plaintiffs, Culbreath Isles Property Owners Association, Inc., Orline M. Sidman, and

Florida Policyholders, LLC, respectfully move for an Order to Enforce the Court's June 23, 2015

Order, November 4, 2013 Pretrial Statement, February 28, 2013 Case Management and

Scheduling Order, and February 26, 2013 Case Management Report, and as grounds therefore,

would show to the Court:

**Procedural History**

1.     On February 26, 2013, the parties to this litigation, along with their counsel,

submitted to the Court their Case Management Report in which the parties agreed to certain

deadlines to conduct discovery; disclose the existence of witnesses and the substance of their

testimony; disclose the existence and identification of documentary evidence; and acknowledged

that the parties were aware of and would comply with the pretrial disclosure requirements and

Federal Rule of Civil Procedure 26(a)(3) and Final Pretrial Procedure requirements as stated in Local Rule 3.06. (DE 25)

2.      On February 28, 2013, this Court entered its Case Management and Scheduling Order. (DE 26)  In addition to establishing various discovery deadlines, paragraph 2 of the Order directed the parties to meet the Pretrial Disclosure requirements and deadlines in Federal Rule of Civil Procedure 26(a)(3), and to adhere timely to all requirements in Local Rule 3.06 concerning Final Pretrial Procedure.

3.      On November 4, 2013, the parties jointly submitted a Pretrial Statement to the Court which the parties represented to the Court was compliant with Local Rule 3.06.  (DE 85)  The Pretrial Statement purported to list all witnesses who may be called at trial by either party and all the exhibits to be offered at trial with notation of all objections thereto.

4.      On June 23, 2015, this Court entered its Order denying the parties' respective motions for summary judgment.  (DE 122) In the Order, this Court stated, in pertinent part, that "…this lawsuit is factually involved and genuine issues of material fact are still in dispute concerning (1) whether alleged misrepresentations on the 2010 renewal application render the Policy void *ab initio*; (2) whether the settlement entered into between Kirkwood and Culbreath is invalid because Kirkwood did not give her consent; and (3) whether any coverage exists for the Lewis claim in light of the allegations that Culbreath did not comply with the notice provision in the Policy."  The Order stated that the parties' motions for summary judgment were denied as to the issues remaining to be decided.  The Order also stated that the Court would convene a Status Conference on Thursday, July 2, 2015, to discuss with counsel the scheduling of a bench trial for resolution of the genuine issues of material fact that exist in the case.

5.      As ordered by the Court, lead counsel for each of the parties attended the scheduled Hearing and addressed the questions raised by the Court concerning the anticipated length of the trial, attendance of witnesses, and the like.  At no time during the Hearing did any attorney representing any party advise the Court of any objection they had to the identification of the issues remaining as articulated in the June 23, 2015 Order. Likewise, no counsel for any party advised the Court of the need to amend any Pretrial Statements or any of the disclosures required under Local Rule 3.06(c).

6.      At no time subsequent to the submission of the parties' Pretrial Statement has any party supplemented any Rule 26 Disclosure, Response to Request for Production or Interrogatory Answers.

### Facts Which Give Rise To The Motion

At the July 2, 2015 Hearing, this Court ordered that the trial of this matter, after consultation with all counsel of record, be scheduled to commence at 10:30 a.m. on August 11, 2015. The parties jointly represented it would be a three-day trial based upon the issues identified in the Court's June 23, 2015 Order. Beginning Wednesday, July 8, 2015, counsel for Travelers initiated a series of emails in which they divulged for the first time their intention to try issues that were not identified in the Court's June 25, 2015 Order, to present testimony from witnesses who were not previously disclosed and listed on the Pretrial Statement, and to subpoena and introduce documentary evidence that had never been disclosed through discovery and, instead, the records custodian for the entity in possession of the records would be subpoenaed and asked to testify about them at trial.

1.      On July 8, 2015, Travelers' attorney Bradley Aserlind sent an email to Sidman's lead counsel, Mark Buell, advising that Travelers intended to call a Buell & Elligett lawyer,

3

Shirley Faircloth, to testify regarding entries in Buell & Elligett's time records.  Mr. Aserlind inquired whether Mr. Buell would be willing to accept service by certified mail of Ms. Faircloth's subpoena.  Mr. Buell responded by inquiring how any of those facts were related to any of the remaining issues identified by this Court, and also noted that Ms. Faircloth was not listed as a witness in the Pretrial Statement.  True and accurate copies of Mr. Aserlind's email and Mr. Buell's reply are attached hereto as Exhibit 1.

2.      Later that same afternoon, Travelers' lead counsel, Andrew Tramont, responded to an email from Culbreath Isles' lead attorney, Ron Bush. In this email, Mr. Tramont suggested that because of their desire to try an issue not identified by this Court in the June 25, 2015 Order, it would be best to bifurcate the issues that the Court actually identified would be tried from those Travelers' intended to try. A true and accurate copy of Mr. Tramont's email to Mr. Bush is attached hereto as Exhibit 2.

3.      On July 9, 2015, Travelers served its Notice of Subpoena Duces Tecum to Non-Party for Trial upon the records custodian for Tampa General Hospital.  Therein, Travelers sought to compel Tampa General's Records Custodian to present the medical records of Phyllis Kirkwood pertaining to her admission to Tampa General from November 7, 2010 to February 28, 2011.  A true and accurate copy of the Notice of Subpoena Duces Tecum is attached hereto as Exhibit 3.

4.      On July 10, 2015, counsel for Ms. Sidman, Mark Buell, advised Mr. Tramont that there was no need to issue a subpoena for Ms. Faircloth, but Ms. Sidman would object to calling new witnesses not named in the Pretrial pleadings, including Ms. Faircloth and Tampa General or others.  Mr. Buell also advised that the Plaintiffs were not agreeable to bifurcation or that the amount of attorneys' fees was an issue identified by the Court as pertaining to Ms. Kirkwood and

4

Ms. Sidman.  A true and accurate copy of the email and Mr. Tramont's response are attached as

Exhibit 4. On July 15, 2015, Travelers served its Notice of Subpoena to Appear and Testify at

Trial on Ms. Faircloth. A true and accurate copy of the Subpoena is attached as Exhibit 5.

**<u>Argument</u>**

At the outset, undersigned counsel would like to explain to the Court that, typically,

issues such as those which have arisen would be addressed by way of timely objection at trial.

However, given the unique circumstances of the procedural posture of this case and the fact that

the case is to be tried before the Court in a bench trial, the undersigned felt compelled to bring

these issues before the Court prior to the commencement of the scheduled trial so as to avoid

wasting any of the Court's valuable time or depleting the time that the parties stipulated to the

Court would be necessary to try the case.

Obviously, this Court has inherent authority to enforce the Orders it issues. <u>Martin v.

Automobili Lamborghini Exclusive, Inc.</u>, 307 F.3d 1332, 1335 (11th Cir. 2002) (courts have the

inherent authority to control the proceedings before them). The parties are bound by those Orders

unless they timely and properly seek relief from the Court that issued the Order, or, alternatively,

the Order is quashed or otherwise reversed on appeal. <u>Maness v. Meyers</u>, 419 U.S. 449, 459

(1975) (orderly and expeditious administration of justice by the courts requires that 'an order

issued by a court with jurisdiction over the subject matter and person must be obeyed by the

parties until it is reversed by orderly and proper proceedings.') (internal citation omitted). In this

case, this Court has entered clear and unambiguous Orders regarding discovery and its deadlines,

pretrial procedure, the disclosure of witnesses and exhibits, and the identity of the issues to be

tried. Travelers has not sought to be relieved of its obligations under any of the Orders or

stipulations, which its recent conduct unquestionably violate. Moreover, no good cause could be

shown to excuse Travelers from the mandatory obligations imposed by the Orders and its own stipulations. Its attempts to circumvent the Orders should be outright rejected and rebuffed.

WHEREFORE, the Plaintiffs respectfully request the Court to enter its Order enforcing its previous Orders, to direct that Travelers will be confined to the witnesses and exhibits identified in the parties' Joint Pretrial Statement, to limit the issues at trial to those identified in the Court's June 23, 2015 Order, and for such other relief as the Court deems appropriate.

## Local Rule 3.01(g) Certification

The undersigned attorneys hereby certify that they have conferred with opposing counsel by telephone on July 21, 2015, and opposing counsel does not agree on the resolution of this motion and objects to it.

Respectfully submitted,

/s/ George A. Vaka
George A. Vaka, Esq.
Florida Bar No. 374016
gvaka@vakalaw.com
Nancy A. Lauten, Esq.
Florida Bar No. 0593052
nlauten@vakalaw.com
Vaka Law Group
777 S. Harbour Island Blvd., Suite 300
Tampa, Florida  33602
Tel:  (813) 549-1799
Fax:  (813) 549-1790
Attorneys for Plaintiff, Florida
Policyholders, LLC

/s/ Mark P. Buell
Mark P. Buell, Esq.
Florida Bar No. 217603
buell@belawtampa.com
Buell & Elligett, P.A.
3003 W. Azeele Street, Suite 100
Tampa, Florida  33609
Tel: (813) 874-2600
Fax: (813) 874-1760

Attorney for Plaintiff, Orline M. Sidman

/s/ Ronald E. Bush
Ronald E. Bush, Esq.
Florida Bar No. 443964
rbush@bgrplaw.com
Bush, Graziano Rice & Platter, P.A.
101 E. Kennedy Blvd., Suite 1700
P.O. Box 3423
Tampa, Florida 33601-3423
Phone: 813.228.7000; Fax: 813.273.0091
Attorneys for Culbreath Isles Property
Owners Association, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2015, I electronically filed the foregoing with the Clerk

of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document

and the notice of electronic filing by first class mail to the following non-CM/ECF participants:

None.

/s/ George A. Vaka
Attorney

7

## George Vaka

| | |
|---|---|
| **From:** | Mark Buell <Buell@belawtampa.com> |
| **Sent:** | Wednesday, July 08, 2015 2:54 PM |
| **To:** | 'Bradley Aserlind' |
| **Cc:** | Tom Elligett; Mindy Mallory |
| **Subject:** | RE: Culbreath et al. v. Travelers - Witness Subpoena |

Brad:

Please explain how this is related to any of the three issues reserved by Judge Lazzara. As to Sidman, the only remaining issue is "consent." The amount of fees is not an issue. Moreover, Ms. Faircloth was not listed as a witness in the Pretrial statement.  Many thanks. MB

-----Original Message-----
From: Bradley Aserlind [mailto:bba@rtgn-law.com]
Sent: Wednesday, July 08, 2015 2:37 PM
To: Mark Buell
Cc: Tom Elligett
Subject: Culbreath et al. v. Travelers - Witness Subpoena

Mark,

Travelers intends to call Shirley Faircloth to testify at trial in this matter regarding several entries in Buell & Elligett's time records from its representation of Phyllis Kirkwood in the underlying action. Will you accept service by certified mail of Ms. Faircloth's subpoena?

Presumably Ms. Faircloth will also be able to testify regarding the authenticity of the firm's time records, but if that is not the case, Travelers will also subpoena Buell & Elligett's records custodian. If that person's testimony is necessary, will you also accept service by certified mail of his or her subpoena?

Please advise.

Thanks,

--
Bradley B. Aserlind, Esq.
Rodriguez Tramont & Núñez, P.A.
255 Alhambra Circle - Suite 1150
Coral Gables, Florida 33134
Telephone: 305-350-2300
Facsimile: 305-350-2525

www.rtgn-law.com

www.stockmarketlosslawyer.com

**EXHIBIT**

NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the

responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Rodriguez Tramont Guerra & Nuñez, P.A. for any loss or damage arising in any way from its use.

## George Vaka

| | |
|---|---|
| **From:** | Andrew Tramont <avt@rtgn-law.com> |
| **Sent:** | Wednesday, July 08, 2015 3:35 PM |
| **To:** | Ron Bush; Bradley B. Aserlind |
| **Cc:** | Karen Shimonsky; Mark Buell; George Vaka |
| **Subject:** | RE: Culbreath v. Travelers - Witness Subpoena |

**oCaseID:** 1272

Ron:

As to your first question, about which of the three issues Mr. Chibani would testify to, the answer would issue one, which is "whether alleged misrepresentations on the 2010 renewal application render the Policy void ab initio." Although stipulated fact number 65 touches on this point, by its reference to "Claims [Culbreath] had pending against it," it does not include in its reference the other question asked in the application, which is: "Has any suit or legal action been filed by...the Applicant against any member of the Applicant." In his deposition, Mr. Chibani testified that his answer to this sub-question was false. We set out that testimony at pages 3 and 4 of our recently filed reply brief. Since it's not specifically stipulated to, we want him to testify that he was aware of the Lewis lawsuit (as opposed to the "Claim") and that he acknowledges that his answer was false.

If Culbreath is willing to allow his deposition into evidence in place of his appearance, that will be acceptable to us.

Also, I would note that Judge Lazzara's order mentions the "alleged misrepresentation," so unless Culbreath is willing to concede that Culbreath's answers on the application were misrepresentations, we need Mr. Chibani.

At this point, for our defense of the Culbreath claim, we intend to call Melissa Morin, Mr. Chibani, an underwriter from Travelers whose name we will give you shortly whose testimony will be along the lines of what was contained in Ejdani Curri's affidavit, maybe Francis Friscia, and Gary Schaaf.

With respect to Mr. Schaaf, I'd like to make this suggestion to your side as well as Mark's team (and George): it would seem to make the most sense to plan to bifurcate the issue of the reasonableness of Culbreath and Kirkwood's state court fees, and to have that testimony be contingent on the outcome of the main trial. It would not be necessary if the court rules in favor of Travelers and finds that neither Plaintiff is entitled to fees. Or, it may be unnecessary if the agrees with what I expect would be the Plaintiffs' argument, which is, if Plaintiffs win, Travelers cannot question the amounts awarded and/or agreed to in the lower court proceeding. Or there could be a situation where one Plaintiff wins and one does not, so there may be a need for Mr. Schaaf's testimony with respect to one set of fees but not the other.

For this reason, it would seem to make the most sense to wait on his testimony until the court rules on the main part of the case. Would you all agree with that approach?

I think this responds to all of your questions. Of course we reserve the right to modify the foregoing list of witnesses if that becomes necessary.

Thanks
AVT

Andrew V. Tramont, Esq.
Rodriguez Tramont & Núñez, P.A.
255 Alhambra Circle - Suite 1150



Coral Gables, Florida 33134
Telephone: 305-350-2300
Facsimile: 305-350-2525
www.rtgn-law.com
www.stockmarketlosslawyer.com

NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Rodriguez Tramont & Nuñez, P.A. for any loss or damage arising in any way from its use.

-----Original Message-----
From: Ron Bush [mailto:rbush@bgrplaw.com]
Sent: Wednesday, July 08, 2015 2:58 PM
To: Bradley B. Aserlind
Cc: Karen Shimonsky; Andrew Tramont; Mark Buell; gvaka@vakalaw.com; Ron Bush
Subject: RE: Culbreath v. Travelers - Witness Subpoena

Bradley

I do not represent Mr. Chibani and to the best of my knowledge he is no longer an officer of my client.  Consequently, I cannot accept service on his behalf.  Also, would you be so kind as to explain which of the 3 specific issues identified by the court  Mr. Chibani will be asked to address - that have not already been admitted?  Also - would you let us know who else Travelers plan to call as witnesses at the trial? Thanks.
Ron

Ronald E. Bush | Bush Graziano Rice & Platter, P.A.
P.O. Box 3423
101 E. Kennedy Boulevard, Suite 1700
Tampa, FL 33601
(813) 228-7000 (Office Main)
(813) 204-2844 (Direct Dial)
(813) 273-0091 (Fax)
www.bgrplaw.com

This electronic message, and all of its contents, contains information from BUSH GRAZIANO RICE & PLATTER, P.A., which is privileged, confidential or otherwise protected from disclosure. The information is intended to be for the addressee only. If you are not the addressee, any disclosure, copy, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately and destroy the original message and all copies.

-----Original Message-----
From: Bradley Aserlind [mailto:bba@rtgn-law.com]
Sent: Wednesday, July 08, 2015 2:21 PM
To: Ron Bush
Cc: Karen Shimonsky; Andrew Tramont

Subject: Culbreath v. Travelers - Witness Subpoena

Ron,

Travelers intends to call Saade Chibani to testify at trial in this matter. Will you accept service by certified mail of Mr. Chibani's subpoena?

Thank you,

--
Bradley B. Aserlind, Esq.
Rodriguez Tramont & Núñez, P.A.
255 Alhambra Circle - Suite 1150
Coral Gables, Florida 33134
Telephone: 305-350-2300
Facsimile: 305-350-2525

www.rtgn-law.com

www.stockmarketlosslawyer.com

NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Rodriguez Tramont Guerra & Nuñez, P.A. for any loss or damage arising in any way from its use.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CULBREATH ISLES PROPERTY
OWNERS ASSOCIATION, INC.,
ORLINE M. SIDMAN, and FLORIDA
POLICYHOLDERS, LLC,

       Plaintiffs,

v.                    CASE No.: 8:12-cv-02928-RAL-EAJ

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

       Defendant.

_____/

## NOTICE OF SUBPOENA DUCES TECUM OF NON-PARTY
## FOR TRIAL IN A CIVIL ACTION

**TO**: Counsel for Orline M. Sidman, personal representative of the estate of Phyllis Ann

Kirkwood; Counsel for Plaintiff Florida Policyholders, LLC; Counsel for Plaintiff Culbreath

Isles Property Owners Association, Inc.

    **NOTICE IS HEREBY GIVEN** that pursuant to Rule 45 of the Federal Rules of Civil

Procedure and Fla. Stats. § 395.3025(4)(d) and § 456.057(7)(a)(3), Defendant Travelers Casualty

and Surety Company of America will request the appearance at trial of the records custodian of

Tampa General Hospital, 1 Tampa General Cir, Tampa, FL 33606. The custodian has been

directed to appear at 10:30 a.m. on August 11th, 2015 at the Sam Gibbons U.S. Courthouse, 801

North Florida Avenue, Tampa, FL 33602. A copy of the subpoena, which notes documents that

the records custodian will certify and produce, is attached to this notice.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on July 9, 2015, I served via electronic mail the within



document to: Mark P. Buell and Raymond T. Elligett, Jr., Buell & Elligett, P.A., counsel for

Plaintiff Orline Sidman, at buell@belawtampa.com, elligett@belawtampa.com, 3003 W. Azeele

Street, Suite 100, Tampa, FL 33609; George A. Vaka, Vaka Law Group, counsel for Plaintiff

Florida Policyholders, LLC, at gvaka@vakalaw.com, 777 S. Harbor Island Blvd., Suite 300,

Tampa, FL 33602; and Ronald E. Bush and Karen Shimonsky, Bush Graziano Rice & Platter,

P.A., counsel for Plaintiff Culbreath Isles Property Owners Association, Inc. at

rbush@bgrplaw.com and kshimonsky@bgrplaw.com, P.O. Box 3423, Tampa, FL 33601.

RODRIGUEZ TRAMONT & NUÑEZ, P.A.
*Attorneys for Travelers Casualty and*
*Surety Company of America*
255 Alhambra Circle, Suite 1150
Coral Gables, Florida 33134
Telephone: (305) 350-2300
Facsimile: (305) 350-2525

By    *s/ Andrew V. Tramont*

ANDREW V. TRAMONT, ESQ.
Florida Bar No.:  322830
avt@rtgn-law.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CULBREATH ISLES PROPERTY
OWNERS ASSOCIATION, INC.,
ORLINE M. SIDMAN, and FLORIDA
POLICYHOLDERS, LLC,

        Plaintiffs,

v.                           CASE No.: 8:12-cv-02928-RAL-EAJ

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

        Defendant.

_____/

## SUBPOENA DUCES TECUM OF NON-PARTY FOR TRIAL IN A CIVIL ACTION

**TO**: TAMPA GENERAL HOSPITAL (attn: records custodian)

      YOU ARE HEREBY COMMANDED to appear in the United States District Court at the time, date, and place set forth below to testify at trial in this civil action. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

**DATE AND TIME OF TRIAL**: Tuesday, August 11th, 2015. 10:30 a.m.

**ADDRESS**: Sam Gibbons U.S. Courthouse, 801 North Florida Avenue, Tampa, FL 33602.

**COURTROOM**: 15B

You must also bring with you the following medical records for patient PHYLLIS A. KIRKWOOD (DOB: 09/28/1951) for the dates of service 11/07/2010 to 02/28/2011:

    a)  Admission papers

    b)  Discharge papers and discharge summary

    c)  Medical history

    d)  Physical examinations

e) Doctor consultations

f) Physician notes

g) Any other documents or papers indicating the date on which patient suffered stroke

These records shall be certified by your record's custodian.

The provisions of the Federal Rules of Civil Procedure 45(c), relating to your protection as a person/entity subject to a subpoena, and Rule 45(d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 7.9.15

Signature of Issuing Attorney:

Andrew V. Tramont
*Attorney for Travelers Casualty and Surety Company of America*
255 Alhambra Circle, Suite 1150
Coral Gables, FL 33134
(305) 350-2300
avt@rtgn-law.com
Florida Bar No.:  322830

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**George Vaka**

| | |
|---|---|
| **From:** | Andrew Tramont <avt@rtgn-law.com> |
| **Sent:** | Friday, July 10, 2015 7:04 PM |
| **To:** | Mark Buell |
| **Cc:** | Tom Elligett; Mindy Mallory; Bradley B. Aserlind; Shirley Faircloth; George Vaka; RBush@bgrplaw.com; Karen Shimonsky; Nancy Lauten |
| **Subject:** | Re: Culbreath et al. v. Travelers - Witness Subpoena |
| | |
| **oCaseID:** | 1272 |

Thank you Mark for the accommodations regarding the subpoenas. Although we disagree with your interpretation of Judge Lazzara's order, we do intend to argue and present evidence with respect to all issues identified by him. We will let you know on Monday who we intend to call, although as you know that can be subject to change.  But when there is a change we will let you know.

One development is that Melissa will be there the whole week so there's no need to take her out of turn. Can you let us know if you intend to testify, or, if not, I can just email you a subpoena?

Thanks

AVT

AVT
Sent from a mobile device.

On Jul 10, 2015, at 6:57 PM, Mark Buell <Buell@belawtampa.com> wrote:

> A:
>
> There's no need to serve her. However, we object to your calling new witnesses not named in the pretrial pleadings, including Ms. Faircloth, Tampa General Hospital, or others. But you can mail the subpoena. We do not object to the authenticity of my firm's billing records, but reserve the right to object on other grounds, including their relevance.
>
> We also are not agreeable to bifurcation, nor do we agree the amount of fees is an issue. Judge Lazzara made it clear the only issue relating to Kirkwood/Sidman is consent. Please let me know if you intend to argue either of the other two issues against my client (misrepresentation on the 2010 application and late notice).
>
> Can you tell me whom you intend to call at trial (or what depositions you intend to read)?  Many thanks.
> MB
>
> ---
>
> **From:** Andrew Tramont [mailto:avt@rtgn-law.com]
> **Sent:** Thursday, July 09, 2015 2:21 PM
> **To:** Andrew Tramont; Mark Buell; Tom Elligett; Mindy Mallory
> **Cc:** Bradley B. Aserlind; Shirley Faircloth
> **Subject:** RE: Culbreath et al. v. Travelers - Witness Subpoena
>
> Mark, can you tell me yet if you'll accept the subpoena for Shirley, subject to your right to object to it or to seek to quash it?  Or would she prefer that I serve her in a more traditional manner?

EXHIBIT 4

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CULBREATH ISLES PROPERTY
OWNERS ASSOCIATION, INC.,
ORLINE M. SIDMAN, and FLORIDA
POLICYHOLDERS, LLC,

           Plaintiffs,

v.                                CASE No.: 8:12-cv-02928-RAL-EAJ

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

           Defendant.

_____/

## SUBPOENA TO APPEAR AND TESTIFY AT TRIAL IN A CIVIL ACTION

**TO:** SHIRLEY FAIRCLOTH

    YOU ARE HEREBY COMMANDED to appear in the United States District Court at the time, date, and place set forth below to testify at trial in this civil action. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

**DATE AND TIME OF TRIAL**: Tuesday, August 11th, 2015. 10:30 a.m.

**ADDRESS**: Sam Gibbons U.S. Courthouse, 801 North Florida Avenue, Tampa, FL 33602.

**COURTROOM**: 15B

    The provisions of the Federal Rules of Civil Procedure 45(c), relating to your protection as a person subject to a subpoena, and Rule 45(d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Signature of Issuing Attorney: _____ Date: 7-15-15

Andrew V. Tramont, Esq.
*Attorney for Travelers Casualty and Surety Company of America*
Rodriguez Tramont & Nunez, P.A.
255 Alhambra Circle, Suite 1150
Coral Gables, FL 33134
(305) 350-2300
avt@rtgn-law.com
Florida Bar No.: 322830



AO 88  (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

136

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CULBREATH ISLES PROPERTY
OWNERS ASSOCIATION, INC.,
and ORLINE M. SIDMAN,
*as plenary guardian and on behalf of*
*Phyllis Ann Kirkwood*, and
FLORIDA POLICYHOLDERS, LLC,

      Plaintiffs,

v.                                                      CASE NO: 8:12-cv-2928-T-26EAJ

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

      Defendant.

_____/

## O R D E R

    Upon due and careful consideration of the procedural history of this case, it is

ordered and adjudged that the Plaintiffs' opposed Amended Corrected  Motion to Enforce

(Dkt. 135) is denied as unnecessary.  The Court's orders which are the subject of the

motion will be enforced by this Court during the course of the scheduled bench trial.  In

the event any party perceives that another party is acting in a manner contrary to those

orders, that party may lodge an appropriate objection and the Court will issue an

appropriate ruling.

Counsel for the parties are reminded that pursuant to Local Rule 3.06(e) "[i]f new evidence or witnesses are discovered after the filing of the pretrial statement, the party desiring to use the same shall immediately notify opposing counsel and the Court, and such use shall be permitted only by order of the Court in the furtherance of justice." Counsel are also reminded that pursuant to Federal Rule of Civil Procedure 16(e) that "[t]he court may modify the order issued after a final pretrial conference only to prevent manifest injustice."

**DONE AND ORDERED** at Tampa, Florida, on July 22, 2015.


_____s/*Richard A. Lazzara*_____
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>COPIES FURNISHED TO</u>:
Counsel of Record

-2-

153a

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY FLORIDA
PROBATE, TRUST AND GUARDIANSHIP DIVISION**

IN RE: GUARDIANSHIP OF

**PHYLLIS ANN KIRKWOOD**                    File No: 11-CP-000043

    Incapacitated                          Division: A

_____/

### PETITION FOR AUTHORIZATION TO ACT

ORLINE M. SIDMAN, as plenary guardian of the person and property of PHYLLIS ANN KIRKWOOD files this Petition for Authority to Act and alleges:

1.      ORLINE M. SIDMAN was appointed as plenary guardian of the person and property of PHYLLIS ANN KIRKWOOD (the "Ward") and Letters of Plenary Guardianship were issued by this Court on February 17, 2011.

2.      At the time of the incapacity of the Ward, she was a party in a civil proceeding pending in Hillsborough County Circuit styled Culbreath Isles Property Owners Association, Inc. v. Nancy Lewis and Richard B. Lewis, et al, Case No: 08-24669, Division I, (which case includes the consolidated case styled Culbreath Isles Property Owners Association, Inc. v. Phyllis Ann Kirkwood Case No: 08-24670, Division F) (the "Legal Proceeding").

3.      The Legal Proceeding involves a dispute regarding the application of deed restrictions that resulted in a Final Judgment in favor of the Ward and against Culbreath Isles Property Owners Association, Inc. in the amount of $295,000.00 (the "Final Judgment").

4.      A copy of the Final Judgment is attached as Exhibit "A."

VERIFIED

5. Culbreath Isles Property Owners Association, Inc. has assigned to the Ward and to her counsel Buell & Elligett, P.A. the right to proceed against Travelers Insurance Company under an insurance policy for which the Ward is a third party beneficiary.

6. Petitioner has filed a motion to be substituted as a party in the Legal Proceeding for the Ward and desires to pursue all claims to recover all amounts due under the Final Judgment including interest, attorneys' fees and costs.

7. The foregoing action benefit the Ward because it relates to collection of amounts due on the Final Judgment entered in favor of the Ward.

8. The Ward has been adjudicated incapacitated to act with respect to the rights to be exercised as requested herein.

9. Although a full guardianship plan has not yet been filed, this action will conform to the guardianship plan.

10. Petitioner desires to retain the services of Buell & Elligett, P.A. to represent her in the Legal Proceeding.

11. Buell & Elligett, P.A. represented the Ward in the Legal Proceeding prior to her incapacity and are qualified to represent the Petitioner as the Ward's representative.

Wherefore, pursuant to Florida Statute Section 744.441(11), Petitioner requests authority of this Court to pursue and defend all claims in the Legal Proceedings on behalf of the Ward, including claims to collect from Travelers all amounts due to the Ward and the Ward's counsel, and to retain the firm of Buell & Elligett, P.A. to represent Petitioner in the legal proceeding.

VERIFIED

Under penalties of perjury, I, Orline M. Sidman, declare that I have read the foregoing and the facts alleged are true, to the best of my knowledge and belief.

Signed this 2 day of March 2011.

*Orline Sidman as Guardian*

Orline M. Sidman, as Plenary Guardian of the
Person and Property of Phyllis Ann Kirkwood

Peter J. Kelly, Esquire
Florida Bar No. 328618
**GLENN RASMUSSEN FOGARTY**
**& HOOKER, P.A.**
100 South Ashley Drive, Suite 1300
Post Office Box 3333
Tampa, Florida 33601-3333
(813) 229-3333
(813) 229-5946 (fax)
Attorneys for Petitioner

STATE OF FLORIDA        )
COUNTY OF HILLSBOROUGH)
THIS IS TO CERTIFY THAT THE FOREGOING IS A
TRUE AND CORRECT COPY OF THE DOCUMENT ON
FILE IN MY OFFICE. WITNESS MY HAND AND
OFFICIAL SEAL THIS 14TH DAY OF JULY
, 20 15

PAT FRANK, CLERK
BY _____ D.C.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

## CLERKS MINUTES - GENERAL

CASE NO.  8:12-cv-2928-T-26EAJ                DATE:  August 13, 2015

TITLE: Culbreath Isles Property Owners Assoc., et al.,   v.   Traveler's Casualty & Surety Co., of America

Time: 9:55 -    12:18  & 1:30  - 3:41  =  5.31        Courtroom: 15B

JUDGE: **RICHARD A. LAZZARA**            COURTROOM DEPUTY:  Susan Saylor

COURT REPORTER:  Sherry Jackson            INTERPRETER: N/A

Attorneys for Plaintiffs                Attorneys for Defendants
Ron Bush                                   Andrew Tramont
George Vaka                                Bradley Aserlind
Mark Buell
Raymond Elligett

PROCEEDINGS: **BENCH TRIAL   (Day 3)**

Pltf exhibit admitted into evidence #1.

9:57  Mr Vaka examination of witness: Francis Friscia, Esq.  Pltfs exhibits admitted into evidence #54, 55, 139.
10:10  Defts cross examination.  Deft exhibit admitted into evidence #53, 54.
12:09  Redirect

1:30 Mr Buell for Pltf calls witness: Orline Sidman (Sworn & testified) Pltfs exhibits admitted into evidence #121, 127, 128, 135.
1:43 Defts cross examination.  Deft's exhibit admitted into evidence #35
3:05 Redirect

3:30 Pltf stated that claims have been settled as to Culbreath Isles Property Owners Association/Lewis case with Travelers Casualty and Surety Co. of America and that Ron Bush, Esq shall submit a Proposed order of dismissal.
3:31 Mr Buell exhibit admitted into evidence #111.
3:32 Pltfs - Deposition transcript of Melissa Morin to be given to the court tomorrow by 8:45 a.m.

3:41 Court in recess, to resume tomorrow at 9:00 a.m.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CULBREATH ISLES PROPERTY
OWNERS ASSOCIATION, INC.,
ORLINE M. SIDMAN, AND
FLORIDA POLICYHOLDERS, LLC,

      Plaintiff[s],   √
      Government _____

Case No:  8:12-cv-02928-RAL-EAJ

v.

                  _____ Evidentiary
TRAVELERS CASUALTY AND SURETY     √     Trial
COMPANY OF AMERICA,             _____ Other

      Defendant[s],_____

| EXHIBIT LIST | | | | |
|---|---|---|---|---|
| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
| 1 | | AUG 13 2015 | | Policy No. 104885282, policy period February 20, 2009, to February 20, 2010 [Bates Stamped TRV00049-TRV00074; DE 67-1] |
| 2 | AUG 11 2015 | AUG 11 2015 | M. Buell | 10.16.08 Complaint for Permanent Injunctive Relief and Declaratory Relief Against Kirkwood |
| 3 | | | | 10.20.08 Complaint for Permanent Injunctive Relief and Declaratory Relief Against Lewis |
| 4 | AUG 11 2015 | AUG 11 2015 | M. Buell | 11.11.08 Letter from Buell to Friscia re: potential resolution |
| 5 | | | | 12.12.08 Lewis Motion to Dismiss [Friscia Deposition Exhibit 1; Bates Stamped FRISCIA_000241] |
| 6 | AUG 11 2015 | AUG 11 2015 | M. Buell | 1.13.09 Email from Buell to Friscia re: potential resolution |
| 7 | AUG 11 2015 | AUG 11 2015 | M. Buell | 4.7.09 Letter from Buell to Friscia re: potential resolution of case |
| 8 | AUG 11 2015 | AUG 11 2015 | M. Buell | 4.7.09 Kirkwood Answer to Complaint for Permanent Injunctive Relief and Declaratory Relief |

Case Number: 8:12-cv-02928-RAL-EAJ

Page  12  of  14  Pages

## EXHIBIT LIST-- CONTINUATION SHEET

| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
|---|---|---|---|---|
| 124 | AUG 12 2015 | AUG 12 2015 | B. Lofano | 3.1.11 letter from Friscia to Lofaro regarding the objections he unilaterally filed to Culbreath Isles proceeding with third party claims against Travelers [Lofaro Deposition Exhibit 32; Bates Stamped Lofaro Case File 000076] |
| 125 | | | | 3.1.11 letter from Lofaro to Buell, Frick, and Friscia withdrawing response in opposition to add third party claim [Lofaro Deposition Exhibit 33; Bates Stamped Lofaro Case File 000081] |
| 126 | | | | 3.1.11 letter from Lofaro to Friscia stating he prepared opposition as he thought it was in best interest of association but has withdrawn it after their earlier discussion [Lofaro Deposition Exhibit 34; Bates Stamped Lofaro Case File 000087] |
| 127 | AUG 13 2015 | AUG 13 2015 | O. Sidman | 3.2.11 Petition for Authorization to Act [Certified Court Copy] |
| 128 | AUG 13 2015 | AUG 13 2015 | O. Sidman | 3.9.11 Order Granting Petition for Authorization to Act [Certified Court Copy] |
| 129 | | | | 3.14.11 email from Lofaro to Morin enclosing supplemental third-party complaint related to the fee claim in the Lewis matter received from counsel for the Association [Lofaro Deposition Exhibit 35; Bates Stamped Lofaro Case File 000028] |
| 130 | | | | 3.30.11 email from Kovacic to Tramont's office informing them pleadings received in October have been shipped to them [Lofaro Deposition Exhibit 36; Bates Stamped Lofaro Case File 000079] |
| 131 | AUG 12 2015 | AUG 12 2015 | M Buell | 1.25.13 [First] Assignment from B&E to FP |
| 132 | AUG 12 2015 | AUG 12 2015 | M. Buell | 1.28.13 Amended Assignment of Claims from Culbreath Isles Property Owners Association, Inc. to Defendant/Counter-Plaintiff/Assignee Phyllis Ann Kirkwood and/or Buell & Elligett, P.A., attorneys for Assignee Kirkwood [DE 67-21, p. 3-5] |

153b

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY FLORIDA
PROBATE, TRUST AND GUARDIANSHIP DIVISION**

IN RE: GUARDIANSHIP OF

**PHYLLIS ANN KIRKWOOD**    FILE NO: 11-CP-000043

Incapacitated    DIVISION: A

_____/

## ORDER GRANTING PETITION FOR AUTHORIZATION TO ACT

On the petition of Orline M. Sidman, as plenary guardian of the person and property of

Phyllis Ann Kirkwood (the "Ward"), for authorization to act in a pending litigation proceeding

of the Ward's described as: Culbreath Isles Property Owners Association, Inc. v. Nancy Lewis

and Richard B. Lewis, et al, Case No: 08-24669, Division I, (which case includes the

consolidated case styled Culbreath Isles Property Owners Association, Inc. v. Phyllis Ann

Kirkwood Case No: 08-24670, Division F)(the "Legal Proceeding"), it is

ADJUDGED:

1.    Petitioner is granted authority to pursue and defend all claims in the Legal

Proceedings on behalf of the Ward, including claims to collect from Travelers all amounts due to

the Ward and the Ward's counsel.

2.    Petitioner is granted authority to retain the firm of Buell & Elligett, P.A. to

represent Petitioner in the legal proceeding.

ORDERED on ___*March 9*_____, 2011.

_____
Circuit Judge

Copy to:
Peter J. Kelly, Esq.

STATE OF FLORIDA      )
COUNTY OF HILLSBOROUGH)
THIS IS TO CERTIFY THAT THE FOREGOING IS A
TRUE AND CORRECT COPY OF THE DOCUMENT ON
FILE IN MY OFFICE, WITNESS MY HAND AND
OFFICIAL SEAL THIS _14TH_ DAY OF _JULY_
_____, 20_15_

PAT FRANK, CLERK
BY _____ D.C.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

## CLERKS MINUTES - GENERAL

CASE NO.  8:12-cv-2928-T-26EAJ                    DATE:  August 13, 2015

TITLE: Culbreath Isles Property Owners Assoc., et al.,   v.   Traveler's Casualty & Surety Co., of America

Time: 9:55  -    12:18  & 1:30  - 3:41  =  5.31        Courtroom: 15B

JUDGE: **RICHARD A. LAZZARA**              COURTROOM DEPUTY:  Susan Saylor

COURT REPORTER:  Sherry Jackson          INTERPRETER: N/A

Attorneys for Plaintiffs                          Attorneys for Defendants
Ron Bush                                          Andrew Tramont
George Vaka                                        Bradley Aserlind
Mark Buell
Raymond Elligett

PROCEEDINGS:  **BENCH TRIAL   (Day 3)**

Pltf exhibit admitted into evidence #1.

9:57  Mr Vaka examination of witness: Francis Friscia, Esq.  Pltfs exhibits admitted into evidence #54, 55, 139.
10:10  Defts cross examination.  Deft exhibit admitted into evidence #53, 54.
12:09  Redirect

1:30 Mr Buell for Pltf calls witness: Orline Sidman (Sworn & testified) Pltfs exhibits admitted into evidence #121, 127, 128, 135.
1:43 Defts cross examination.  Deft's exhibit admitted into evidence #35
3:05 Redirect

3:30 Pltf stated that claims have been settled as to Culbreath Isles Property Owners Association/Lewis case with Travelers Casualty and Surety Co. of America and that Ron Bush, Esq shall submit a Proposed order of dismissal.
3:31 Mr Buell exhibit admitted into evidence #111.
3:32 Pltfs - Deposition transcript of Melissa Morin to be given to the court tomorrow by 8:45 a.m.

3:41 Court in recess, to resume tomorrow at 9:00 a.m.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CULBREATH ISLES PROPERTY
OWNERS ASSOCIATION, INC.,
ORLINE M. SIDMAN, AND
FLORIDA POLICYHOLDERS, LLC,

    Plaintiff[s],    √
    Government _____

                                   Case No:   8:12-cv-02928-RAL-EAJ

v.

                                      _____   Evidentiary
TRAVELERS CASUALTY AND SURETY       √     Trial
COMPANY OF AMERICA,                       _____   Other

    Defendant[s],_____

## EXHIBIT LIST

| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
|---|---|---|---|---|
| 1 | | AUG 13 2015 | | Policy No. 104885282, policy period February 20, 2009, to February 20, 2010 [Bates Stamped TRV00049-TRV00074; DE 67-1] |
| 2 | AUG 11 2015 | AUG 11 2015 | M. Buell | 10.16.08 Complaint for Permanent Injunctive Relief and Declaratory Relief Against Kirkwood |
| 3 | | | | 10.20.08 Complaint for Permanent Injunctive Relief and Declaratory Relief Against Lewis |
| 4 | AUG 11 2015 | AUG 11 2015 | M. Buell | 11.11.08 Letter from Buell to Friscia re: potential resolution |
| 5 | | | | 12.12.08 Lewis Motion to Dismiss [Friscia Deposition Exhibit 1; Bates Stamped FRISCIA_000241] |
| 6 | AUG 11 2015 | AUG 11 2015 | M. Buell | 1.13.09 Email from Buell to Friscia re: potential resolution |
| 7 | AUG 11 2015 | AUG 11 2015 | M. Buell | 4.7.09 Letter from Buell to Friscia re: potential resolution of case |
| 8 | AUG 11 2015 | AUG 11 2015 | M. Buell | 4.7.09 Kirkwood Answer to Complaint for Permanent Injunctive Relief and Declaratory Relief |

Case Number:  8:12-cv-02928-RAL-EAJ   Page  12  of  14  Pages

## EXHIBIT LIST-- CONTINUATION SHEET

| Exhibit No. | Date Identified | Date Admitted | Witness | Description |
|---|---|---|---|---|
| 124 | AUG 12 2015 | AUG 12 2015 | B. Lofano | 3.1.11 letter from Friscia to Lofaro regarding the objections he unilaterally filed to Culbreath Isles proceeding with third party claims against Travelers [Lofaro Deposition Exhibit 32; Bates Stamped Lofaro Case File 000076] |
| 125 | | | | 3.1.11 letter from Lofaro to Buell, Frick, and Friscia withdrawing response in opposition to add third party claim [Lofaro Deposition Exhibit 33; Bates Stamped Lofaro Case File 000081] |
| 126 | | | | 3.1.11 letter from Lofaro to Friscia stating he prepared opposition as he thought it was in best interest of association but has withdrawn it after their earlier discussion [Lofaro Deposition Exhibit 34; Bates Stamped Lofaro Case File 000087] |
| 127 | AUG 13 2015 | AUG 13 2015 | O. Sidman | 3.2.11 Petition for Authorization to Act [Certified Court Copy] |
| 128 | AUG 13 2015 | AUG 13 2015 | O. Sidman | 3.9.11 Order Granting Petition for Authorization to Act [Certified Court Copy] |
| 129 | | | | 3.14.11 email from Lofaro to Morin enclosing supplemental third-party complaint related to the fee claim in the Lewis matter received from counsel for the Association [Lofaro Deposition Exhibit 35; Bates Stamped Lofaro Case File 000028] |
| 130 | | | | 3.30.11 email from Kovacic to Tramont's office informing them pleadings received in October have been shipped to them [Lofaro Deposition Exhibit 36; Bates Stamped Lofaro Case File 000079] |
| 131 | AUG 12 2015 | AUG 12 2015 | M Buell | 1.25.13 [First] Assignment from B&E to FP |
| 132 | AUG 12 2015 | AUG 12 2015 | M. Buell | 1.28.13 Amended Assignment of Claims from Culbreath Isles Property Owners Association, Inc. to Defendant/Counter-Plaintiff/Assignee Phyllis Ann Kirkwood and/or Buell & Elligett, P.A., attorneys for Assignee Kirkwood [DE 67-21, p. 3-5] |

168

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. 8:12-cv-2928-T-26EAJ

CULBREATH ISLES PROPERTY OWNERS
ASSOCIATION, INCORPORATED,
ORLINE M. SIDMAN, and FLORIDA
POLICYHOLDERS, LLC,

                    Plaintiffs,
                                                13 August 2015
-vs-                                              9:55 a.m.
                                                Courtroom 15B
TRAVELERS CASUALTY & SURETY COMPANY,
OF AMERICA,


          Defendants.
------------------------------------/



                TRANSCRIPT OF PROCEEDINGS
                 *(BENCH TRIAL - VOLUME 3)*
          BEFORE THE HONORABLE RICHARD A. LAZZARA,
             UNITED STATES DISTRICT COURT JUDGE

<u>APPEARANCES</u>

**For the Plaintiff:**      **RONALD EDWARD BUSH, ESQUIRE**
                         *Bush, Graziano, Rice & Platter, P.A.*
                         101 East Kennedy Boulevard
                         Tampa, Florida 33602
                         Phone: (813)228-7000
                         Fax: (813)273-0091
                         rbush@bgrplaw.com




     *(appearances continued on next page)*

STENOGRAPHICALLY REPORTED
COMPUTER-AIDED TRANSCRIPTION

1    Number 139.  Can you tell us what that is, please?

2    A    That's an affidavit I signed in this case, I believe.

3    Q    All right, and does the affidavit, the hard copy that's

4    in front of you -- does it have certain attachments to it?

5    A    Yes.

6    Q    Would those attachments be your time sheet, your

7    bill -- your billings for this matter?

8    A    It looks like they're records of the time that was

9    billed by me on this case.

10   Q    Now, as I understand it, you received a draft of the

11   proposed settlement agreement from Mr. Buell's office on

12   December 9th of 2010; is that correct?

13   A    Yes.

14   Q    All right.  And you, I believe, have testified that you

15   reviewed and spoke to the client about that document near or

16   about the time of December 9th?

17   A    Yes.

18   Q    All right, and the hearing that was scheduled on the

19   motion for attorneys' fees was scheduled for the 17th of

20   December; is that right?

21   A    Yes.

22   Q    All right.  Prior to the hearing and after you had

23   spoken to your clients, did you have any conversations with

24   Mr. Tramont about the settlement agreement?

25   A    Yes.

```
 1  Q    And did you discuss the material terms of the
 2  settlement with Mr. Tramont?
 3  A    Yes.  I mean, he contacted me wanting to know what was
 4  going on.
 5  Q    Okay, and did you tell him at that point that the
 6  association was getting ready to agree to a $295,000
 7  subsequent judgment as it pertained to the attorneys' fees?
 8  A    Everything was disclosed.  I had nothing to hide.
 9  Q    Okay, and that was because you --
10           THE COURT:  Did you disclose the amount of the
11  fees to him?
12           THE WITNESS:  Yes, Your Honor.
13           THE COURT:  Two hundred ninety-five thousand
14  dollars?
15           THE WITNESS:  Yes, Your Honor.
16  BY MR. VAKA:
17  Q    You disclosed all the material terms of the agreement?
18  A    Yes (nodding head).
19  Q    Did Mr. Tramont object in any way to the association's
20  entry into a -- a settlement agreement with those terms?
21  A    No.
22  Q    Did he say, "What?  Are you crazy, Mr. Friscia?  Two
23  hundred ninety-five thousand dollars?  That's outrageous"?
24           THE COURT:  If you want to testify, I'll be happy
25  to put you under oath, Mr. Vaka.
```

1              THE WITNESS:  No.  He gave me no guidance in that

2   regard.  He didn't say, "Don't do it.  I'm going to talk to

3   Travelers" or whatever, no.

4   BY MR. VAKA:

5   Q    At the time that Travelers formally disclaimed coverage

6   to the association until the time that you actually signed

7   the settlement agreement on behalf of Culbreath Isles, were

8   you still cooperating fully to the best of your ability with

9   Travelers and their attorneys?

10  A    Yes.  I never gave up.  I was until to the end trying

11  to get Travelers to step up to the plate.

12  Q    Because you wanted them to settle the case and pay the

13  funds on behalf of your client?

14  A    Absolutely.

15  Q    Now, Mr. Friscia, if you could, could you take a look

16  at your billing entries, please, for December 13th of 2010.

17  A    Okay.

18  Q    The first entry for that date references what, sir?

19  A    The telephone conference with Andrew Tramont regarding

20  status of case, possible settlement.

21  Q    Okay.  So, you disclosed the material terms; you

22  disclosed the amount; and you received no objection

23  whatsoever of any kind to your going forward with that

24  settlement?

25  A    No.  My impression was he was finding everything he

1  could out from me and then calling Travelers to discuss it.

2  That was my impression of the call.  Everything I had with

3  him was in that manner.

4         MR. VAKA:  Thank you, sir.  I have no further

5  questions.

6         THE COURT:  Mr. Buell?

7         MR. BUELL:  No questions, Your Honor.

8         THE COURT:  Thank you.

9         Mr. Tramont.

10        MR. VAKA:  Excuse me, Your Honor, can I offer 139

11 in evidence?

12        THE COURT:  Any objection?

13        MR. TRAMONT:  No objection.

14        THE COURT:  It will be received.

15        (Plaintiff's Exhibit 139 was received in

16 evidence.)

17                    *CROSS-EXAMINATION*

18 BY MR. TRAMONT:

19 Q    Good morning, Mr. Friscia.

20 A    Good morning.

21 Q    We met one time before; correct?

22 A    We met on the phone a few times, and then you took my

23 deposition in this case.

24 Q    Right.  But since this underlying case was over, we met

25 in person just once; right?

178

defend an action it repeatedly characterized as frivolous, gladly executed on behalf of its incapacitated client despite the fact that it lacked the requisite authority to do so. Plaintiffs also ask this Court to ignore the misrepresentations made by B&E to the state court.

Plaintiffs make much of the fact that Travelers was aware that Culbreath and Kirkwood were discussing a settlement and eventually entered into an agreement on terms disclosed to Travelers beforehand. This is irrelevant to the inquiry before this Court: was the settlement of the state court lawsuit reached in good faith and does the settlement award a reasonable amount of attorney's fees to Kirkwood, the prevailing party? The only conduct in any way germane to this question is that of the legal representatives of Culbreath and Kirkwood, the parties to the settlement Plaintiffs seek to enforce in this action.

As discussed in Travelers' Post-Trial Brief (Dkt. 172), not only have Plaintiffs failed to make a *prima facie* case that the settlement agreement was reasonable in amount and reached in good faith, the weight of the evidence clearly demonstrates the opposite.

## <u>ARGUMENT</u>

### I.     Travelers' conduct does not bear on the reasonableness and good faith requirements of *Coblentz*.

As the Court has recognized, by this action, Plaintiffs are seeking to enforce a *Coblentz* agreement against Travelers. To enforce such an agreement against an insurer, Plaintiffs must prove the following *separate* elements: (1) coverage, (2) a wrongful refusal to defend, and (3) that the settlement was objectively reasonable ***and*** made in good faith. *See, e.g., Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1324 (M.D. Fla. 2009). Here, only coverage has been conclusively established (by the Eleventh Circuit's opinion).

**A. At most, Travelers' inaction despite its knowledge of Culbreath's intentions to settle constitutes a wrongful refusal to defend.**

Travelers acknowledges that its coverage counsel was made aware of settlement talks between Culbreath and Kirkwood, and that it informed Culbreath that it did not plan on interfering with the settlement by contesting the amount. Travelers' actions in this respect were based on its position at the time that the insurance policy at issue did not provide coverage for the loss (or potential loss) Culbreath faced. Plaintiffs seem to suggest that Travelers should have interfered in the case in spite of its coverage position.[1]

Having taken the position that any award of attorney's fees to the prevailing parties in the underlying action was not covered, there was no reason for Travelers to participate in the negotiation of the settlement, attend any hearings on attorney's fees, advise Culbreath on how to proceed, or even request any information about the particulars of the agreement (i.e., how the $295,000 amount was calculated). Given its coverage position, it is perfectly logical that Travelers told Culbreath it did not intend to challenge the amount of the fees, since to state otherwise would have constituted interference in a matter in which Travelers had no stake. Thus, Travelers' unwillingness to intervene was not "acquiescence and assent to the entirety of the agreement" as Plaintiffs contend. Dkt. 173, p. 14. Rather, it was an entirely prudent reaction to the extant circumstances.

---

[1]    Plaintiffs also erroneously equate the involvement of Travelers' defense counsel, Bennett Lofaro, with the involvement of Travelers itself. Mr. Lofaro was appointed for the sole purpose of defending Culbreath against the counterclaim asserted by Kirkwood. Mr. Lofaro in no way represented Travelers in the underlying action, so any argument that he had the ability (or the duty) to protect Travelers' interests at any hearings or in any negotiations in the underlying action is based on a fundamental misunderstanding (or intentional mischaracterization) of the relationship between appointed defense counsel, the insured, and the insurer. Travelers later retained separate coverage counsel precisely because Mr. Lofaro did not (and could not) properly represent Travelers' interests in the underlying action.

terms of the settlement in the underlying action precludes it from doing so here.[3] *American Pride* is again instructive in this regard. In that case, the Eleventh Circuit eventually upheld a jury verdict in favor of the insurer based on the third prong of *Coblentz* despite the fact that "[t]here was nothing secret about the intended resolution by American Pride and Groff and Mid-Continent was made fully aware of this plan." 601 F.3d at 1151. It is clear that "transparency" is not a vehicle that can be used to circumvent the reasonableness requirement of *Coblentz*. Plaintiffs have cited no case (because there is no case) where an insurer was barred from contesting the reasonableness (or good faith) of a *Coblentz* agreement because the insurer was aware of the insured's intention to settle.  Plaintiffs are essentially asking this Court to stray from the holding in *American Pride* and its progeny by ignoring the third prong of *Coblentz. See also Bond Safeguard*, 2014 WL 5325728 at *9.

Thus, Plaintiffs' efforts to establish the reasonableness of the underlying settlement by relying on Travelers' actions (or inaction) should be rejected. As discussed above, because it completely denied coverage for Culbreath's potential liability for any attorney's fees, ***Travelers did not have an obligation to do or say anything with regard to those claims***. Travelers did not decline to challenge the amount of the fees in December 2010 because it believed them to be reasonable and justified, but rather because it believed, due to its analysis of the policy, that it had no duty to inject itself into the resolution of Culbreath's affirmative claims against Kirkwood. The fact that the Eleventh Circuit found this coverage

---

[3]    Although there was some degree of "transparency" in that Travelers was generally aware the negotiations were taking place and informed of a possible global figure, the negotiations were not completely transparent. Culbreath never informed Travelers it intended to "lie down" in exchange for an inflated settlement sum, it did not disclose the secret $50,000 side deal, and it certainly never told Travelers what Francis Friscia later told Scott Frick, counsel for the Lewises: that "[c]learly, as you surmised in your correspondence, **[the covenant not to execute against Culbreath] explains why the amount of the judgment is what it is.**" *See* Defendant's Exhibit ("Def. Ex.") 27; 28.

181

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


CULBREATH ISLES PROPERTY
OWNERS ASSOCIATION, INC.,
and ORLINE M. SIDMAN, as plenary
guardian and on behalf of Phyllis Ann Kirkwood,
and FLORIDA POLICYHOLDERS, LLC,

          Plaintiffs,

v.                            CASE NO: 8:12-cv-2928-T-26EAJ

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

          Defendant.

_____/


**O R D E R**


    **THIS CAUSE** was remanded by the Eleventh Circuit Court of Appeals for further

proceedings consistent with its single-issue ruling that the fee judgments in the underlying

lawsuits against the homeowners qualified as "wrongful acts" and thus are covered under

the subject Non-Profit Management and Organization Liability insurance policy ("the

Policy") issued by Defendant Travelers Casualty and Surety Company of America

("Travelers") to Plaintiff Culbreath Isles Property Owners Association, Inc.

("Culbreath").[1]  The case was reopened for further proceedings to resolve the remaining

---

    [1]  See dockets 95 and 98 (reported at 601 F. App'x 876 (11th Cir. 2015)).

issues of Travelers' defenses to coverage and ultimately came before the Court for a nonjury trial from August 11, 2015, through August 14, 2015.[2]

Culbreath has now voluntarily dismissed its claims against Travelers regarding Richard and Nancy Lewis ("the Lewises"),[3] leaving only Plaintiffs Orline Sidman ("Sidman"), as personal representative of the estate of Phyllis Kirkwood, and Florida Policyholders, LLC's ("FP") claims against Travelers for resolution by this Court. The Court now has before it Sidman and FP's written closing arguments,[4] Travelers' Post-Trial Brief and appendices,[5] and the parties' respective reply briefs.[6] Plaintiffs also request additional oral argument[7] and Travelers opposes the request.[8] The Court finds that the remaining issues in this case can be resolved without the need for additional oral argument. The greater weight of the evidence before this Court clearly demonstrates that the settlement agreement entered into by Culbreath and Buell & Elligett, P.A. ("B & E"), for the sum of $295,000 in attorney's fees for 350 hours of work (billed at $842 per hour) was not reasonable in amount and not reached in good faith. The Court, therefore,

---

[2] See orders entered at dockets 104, 107, and 122.

[3] See dockets 176 and 177.

[4] See docket 173.

[5] See docket 172.

[6] See dockets 178 and 179.

[7] See docket 174.

[8] See docket 175.

determines that the Florida state court judgment entered pursuant to that settlement agreement will not be enforced against Travelers.

## Background Facts

On October 16, 2008, Culbreath sued property owners Phyllis Kirkwood ("Kirkwood") and the Lewises, in two separate actions in the Thirteenth Judicial Circuit Court in Hillsborough County, Florida, alleging that the condition of their respective properties violated the Culbreath Isles Homeowners' Association's bylaws. Culbreath sued these parties under section 720.305, Florida Statutes, which contains a "prevailing party" attorney's fee provision. Thus, Culbreath was aware that if it lost these cases it would have to pay the prevailing Defendants' fees.

Kirkwood was represented by the B & E law firm, whose principal, Mark Buell ("Buell"), agreed to perform work on the case for $300 per hour. In her answer to Culbreath's complaint, Kirkwood demanded the attorney's fees she would incur in defending the action if she prevailed and asserted a counterclaim against Culbreath for slander of title. At Culbreath's request, Travelers appointed Litchfield Cavo, LLP, to defend Culbreath against the counterclaim. The Lewises filed a Motion to Dismiss on December 12, 2008, in which they requested an award of fees should they prevail. Culbreath did not make a claim for coverage of its exposure for the fees the Lewises expected to incur in defense of Culbreath's lawsuit.

On June 11, 2010, the Florida state court granted final summary judgment in favor of Kirkwood and the Lewises on Culbreath's claims against them, and Culbreath appealed.  On June 23, 2010, Kirkwood and the Lewises filed their respective motions to tax fees and costs, arguing that: (a) they were entitled to fees as prevailing parties under Chapter 720, Florida Statutes, and (b) Culbreath's cases against them were frivolous and thus they were entitled to fees under section 57.105, Florida Statutes.  For the first time, on July 20, 2010, over a year and a half after the Lewises demanded fees in their first motion to dismiss Culbreath's suit, Culbreath notified Travelers that it was seeking coverage under the Policy for the Lewises' fees.

On August 11, 2010, Buell wrote to Culbreath's counsel that Kirkwood had incurred fees of $87,357.50 through July 20, 2010, and that she would seek "a multiplier of approximately 2 to 2.5 consistent with Florida law."[9]  The next day, the state court entered an order granting Kirkwood and the Lewises' motions for attorney's fees and costs, reserving jurisdiction to determine the amounts to be awarded.[10]

On November 4, 2010, Kirkwood entered Tampa General Hospital.[11]  Sidman, her lifelong friend, testified that Kirkwood underwent surgery several days later, suffered a

---

[9]  See Plaintiffs' Trial Exhibit 65.

[10]  See Plaintiffs' Trial Exhibits 66 and 67.

[11]  See Trial Transcript, Vol. 3, pp. 114:16-18.

stroke, and was rendered generally unable to communicate with people.[12]  Buell likely

knew Kirkwood was ill, but there is no evidence that he ever visited his client in the

hospital.  Sidman testified that although she did not advise Buell of Kirkwood's

hospitalization, she thought her husband had advised Buell that Kirkwood was "in the

hospital, and this is what's happened[,]" after which Buell sent Kirkwood flowers.[13]

Sidman also testified that after suffering the stroke in November, Kirkwood's condition

did not improve.[14]  On January 6, 2011, Sidman petitioned the Probate Division of the

Thirteenth Judicial Circuit Court for appointment as Kirkwood's plenary guardian.[15]  On

February 17, 2011, the Probate Court entered an order determining Kirkwood was totally

incapacitated.[16]  The Court subsequently appointed Sidman as Kirkwood's plenary

guardian[17]  After Kirkwood passed away on December 24, 2012, leaving no heirs, the

Probate Court appointed Sidman as the personal representative of Kirkwood's estate on

March 21, 2013.[18]

---

[12]  See id. at 132:1-4; 135:7-138:16.8.

[13]  See id. at 132:22-25-133:2.

[14]  See id. at 133:3-12.

[15]  See Defendant's Trial Exhibit 32.

[16]  See Defendant's Trial Exhibit 35.

[17]  See Defendant's Trial Exhibit 34.

[18]  See Plaintiffs' Trial Exhibit 135.

On December 23, 2010, prior to any hearing on the amount of the award of attorney's fees, the issue of the amount of fees between Kirkwood and Culbreath was resolved when Buell signed a "Joint Stipulation and Agreement" ("the Stipulation") with Culbreath on Kirkwood's behalf, purportedly with her knowledge and consent.[19] Pursuant to the Stipulation, Kirkwood waived her right to collect fees from Culbreath.[20] In exchange for this immunity, Culbreath agreed to the entry of a judgment against it in the amount of $295,000 "in favor of … Kirkwood … payable to Buell & Elligett, P.A."[21] Based on the terms of the Stipulation, Kirkwood agreed that she would not "execute upon, record, or otherwise act upon" that $295,000 judgment.  Culbreath assigned to Kirkwood and B & E "the proceeds from any and all actions, causes of action, or rights it has against any person or entity, including… Travelers."[22]

Therefore, by the terms of their Stipulation, Kirkwood gave up a definite executable judgment against Culbreath in exchange for a speculative claim against Travelers.  Kirkwood relinquished the assured reimbursement of any fees she paid so that B & E could collect $295,000, fees that far exceeded what it billed.  Along with the settlement, Culbreath, Kirkwood, and B & E executed a promissory note whereby

---

[19]   See Plaintiffs' Trial Exhibit 112.

[20]   See id.

[21]   See id.

[22]   See id.

Culbreath agreed to pay the latter two up to $50,000 (for "attorney's fees") plus interest depending on how much Kirkwood recovered from Travelers.[23]

On December 27, 2010, B & E delivered both the Stipulation and the proposed Consent Final Judgment to the state court judge and asked him to enter the judgment.  In the Stipulation, Mr. Buell represented the following to the court:

> 11. **Representatives.**  Each party to this Agreement represents and warrants to the other party hereto that such party has the full authority to bind it, and its successors and assigns, to the terms of this Agreement, and that the person signing it on each such party's behalf has been expressly authorized and instructed to do so by such party.
>
> Each party to this Agreement represents to the others that they are entering into this agreement freely and voluntarily being fully advised of the legal effect of this document by their respective attorneys.[24]

On December 29, 2010, the state court judge entered the Consent Final Judgment without holding a hearing.[25]

While Buell represented Kirkwood in the underlying action, he represents Sidman in the instant case.  He testified at trial about the progression and resolution of the underlying action, as well as his purported motives for settling on Kirkwood's behalf.  He justified his actions in settling the case by pointing to Kirkwood's desire to end the lawsuit and have her attorney's fees paid, that she knew what she wanted as an end result,

---

[23]   See Plaintiffs' Trial Exhibit 114.

[24]   See Plaintiffs' Trial Exhibit 112.

[25]   See Plaintiffs' Trial Exhibit 116.

and his alleged reservations about Culbreath's ability to satisfy a judgment rendered against it.[26]  He also dismissed any suggestion that he should have discussed or explained the terms of the settlement to Kirkwood or a guardian before entering it.[27]  What is troubling to the Court, however, is the fact that the Lewises' attorney, Scott Frick ("Frick"), even though he had the same marching orders from his clients as did Buell from Kirkwood - dismissal of the lawsuit and reimbursement of their attorney's fees - had them personally review, agree to, and execute the settlement agreement with Culbreath.[28] The Court is also troubled by the fact that based on Sidman's testimony Buell knew his client was in the hospital from a conversation Buell had with her husband (resulting in Buell sending Kirkwood flowers) but he took no affirmative steps to investigate and determine the nature and extent of the medical conditions which caused her hospitalization, even though he was negotiating the terms of a settlement agreement on behalf of Kirkwood with Culbreath.

Despite Buell's dismissive attitude regarding why he did not attempt to review the particulars of the settlement agreement with Culbreath with Kirkwood because he knew the result she wanted, the Court determines that there is a universe of difference between discussing with a client the results the client desires and the particular terms on which the

---

[26]  See Trial Transcript, Vol. 1, pp. 72:13-18; 84:9-25; 108:7-8; 103:13-104:1.

[27]  See id. at 23:12-14; Trial Transcript, Vol. 2, pp. 72:13-19.

[28]  See Defendant's Trial Exhibit 31.

client wants those results achieved. In this case, the credible and indisputable evidence clearly establishes that although Buell may have believed that what Kirkwood ultimately wanted was a dismissal of the lawsuit and the payment of her attorney's fees, he did not have her clear and unequivocal authority to enter into the specific terms of the settlement agreement with Culbreath, even assuming his belief was in good faith. See Ponce v. U-Haul Co. of Fla., 979 So. 2d 380, 382 (Fla. Dist. Ct. App. 2008). Indeed, based on the evidence and testimony before the Court, Buell would have been unable to secure Kirkwood's "clear and unequivocal consent" to the specific terms of the Culbreath settlement agreement in light of her mental incapacity during the relevant period when Buell and Francis Friscia ("Friscia"), Culbreath's counsel in the underlying action, were negotiating and then finalizing those terms.[29]

---

[29]   Although Sidman did her best to try and convince this Court that Kirkwood was not mentally incapacitated after suffering a stroke during surgery in November of 2010, it became evident to the Court, based on her demeanor and the manner in which she responded to questioning by the attorneys, that her testimony was obviously colored by her loyalty and devotion to her life-long friend and that her trial testimony given on August 13, 2015, was in direct conflict with the testimony she gave under oath in her deposition taken in June of 2013, when presumably her memory of events would have been better, in two critical respects. In her deposition, Sidman unequivocally testified that as of December 23, 2010, Kirkwood was unable to communicate with people. She also testified in her deposition that following Kirkwood's stroke, Kirkwood was unable even to respond to her. See Trial Transcript, Vol. 3, pp. 133:13-17; 135:21-25; 136:1-8; 137:24-25; 138:1-13. Moreover, her trial testimony regarding the mental competency of Kirkwood during the relevant time period is completely undermined by her signing "under penalties of perjury" on January 6, 2011, the petition she presented to the Probate Court of the Circuit Court of Hillsborough County seeking to become Kirkwood's plenary guardian and by testifying to this Court that she asked another attorney to draft the petition sometime in December. See Defendant's Trial Exhibit 32; Trial Transcript,

On March 3, 2011, Kirkwood, through Sidman, filed a Third Party Complaint against Travelers in the state court lawsuit, arguing that pursuant to the assignment she (as Kirkwood's personal representative) and B & E had received from Culbreath, she could sue Travelers under the policy it had issued to Culbreath.  The Third Party Complaint against Travelers alleged that the Policy provided Culbreath with coverage for the $295,000 in defense fees Culbreath "agreed" she had incurred and that she was awarded.[30]  On March 11, 2011, Culbreath, which had entered into a $212,417 settlement agreement with the Lewises, filed its own Third Party Complaint against Travelers in which it alleged, as Sidman did in her Third Party Complaint, that the Policy indemnified Culbreath for its liability for fees awarded to the defendants who Culbreath unsuccessfully sued.[31]

Travelers moved to dismiss both Sidman's and Culbreath's third party actions, but the motions were denied.  Travelers then petitioned the Second District Court of Appeal for a writ of certiorari.  The appellate court instead issued writs of prohibition barring the lower court from adjudicating the case on the basis that the lower court lost jurisdiction when it entered the final judgments approving Culbreath's settlements with Kirkwood and the Lewises and awarded fees to those defendants.  The appellate court held,

Vol. 3, pp. 179, 1-25; 180, 1-18.

[30]   See Dkt. 66, Exhibit 27.

[31]   See Dkt. 66, Exhibit 28.

-10-

however, that its decisions were without prejudice to Sidman and Culbreath filing independent indemnification actions against Travelers.[32]

After the appellate decisions issued, Culbreath and Sidman sued Travelers in state court, and Travelers removed the action to this Court on December 28, 2012.  Travelers moved to dismiss Sidman's claim for failure to join a necessary party, B & E, which claimed an ownership interest in the claim against Travelers that Culbreath had assigned, and that motion was denied.  Two principals of B & E then formed the corporation known as Florida Policyholders, LLC (FP), presumably because they were faced with the prospect of having to join the action and thus subject B & E to the obligations of a party.[33] B & E transferred its purported interest in the claim against Travelers to FP.  FP then became a Plaintiff in this case while B & E continued to represent Sidman.[34]  The Second Amended Complaint in this action raises two counts of breach of contract against Travelers and alleges that the subject Policy insures Culbreath's liability for the defense fees incurred by Kirkwood and the Lewises resulting from Culbreath's unsuccessful affirmative actions against them.

---

[32]  See Travelers Cas. and Sur. Co. v. Sidman, 103 So. 3d 900 (Fla. Dist. Ct. App. 2012); Travelers Cas. and Sur. Co. v. Culbreath Isles Prop. Owners Ass'n, Inc., 103 So. 3d 896 (Fla. Dist. Ct. App. 2012).

[33]  See Plaintiffs' Trial Exhibits 3, 131, 133.

[34]  See id.

### Discussion

Although the bench trial in this matter commenced regarding the issue of Kirkwood's consent to the Settlement Agreement raised in Travelers' motion for summary judgment, as well as the issue of whether the consent judgment entered pursuant to that agreement was void and thus not entitled to full faith and credit under 28 U.S.C. § 1738, the Court ultimately determined the settlement was a Coblentz[35] Agreement, and the case would be analyzed as such.  As Travelers asserts, the question presented by this case is simple: whether pursuant to Coblentz, Plaintiffs can enforce the consent judgment entered in the underlying action against Travelers.  The Court agrees with Travelers that because the settlement was negotiated in bad faith and awards an unreasonable amount of attorney's fees to the B & E law firm, the consent judgment cannot be enforced against Travelers.

As one court has correctly observed, "[i]n Florida, a party seeking to recover under a Coblentz agreement must prove: (1) coverage; (2) a wrongful refusal to defend; and (3) that the settlement was *objectively* reasonable and made in good faith."  Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1324 (M.D. Fla. 2009) (citations omitted) (emphasis added); see also Mid-Continental Cas. Co. v. Am. Pride Bldg. Co., LLC, 534 F. App'x 926, 928 (11th Cir. 2013) (determining, after canvassing Florida case law, that

---

[35]    Coblentz v. Am. Sur. Co. of N.Y., 416 F.2d 1059 (5th Cir. 1969) (holding that if a liability insurer is informed of an action against its insured, but declines to defend the insured, the insurer may be held to a consent judgment entered in the action absent fraud or collusion).

-12-

under Florida law a consent judgment will only be enforced against an insurer if the insured proves that the settlement amount was reasonable *and* made in good faith) (unpublished); Stephens v. Mid-Continental Cas. Co., 749 F.3d 1318, 1322 (11th Cir. 2014) (citing Am. Pride for same proposition).  Here, only coverage has been conclusively decided by the Eleventh Circuit's opinion on the appeal of the initial summary judgment ruling in this case.  Thus, Plaintiffs must prove the two remaining elements in order to enforce the subject agreement.   Plaintiffs cannot meet their burden.

The Court finds at the outset that Travelers' conduct does not bear on the reasonableness and good faith of Coblentz.  While Travelers acknowledges that its coverage counsel was made aware of settlement talks between Culbreath and Kirkwood regarding attorney's fees, its position (and good faith belief at that time) was that any award of fees to the prevailing parties in the underlying action was not covered. Therefore, there was no reason for Travelers to participate in the negotiation of the settlement, attend any hearing on attorney's fees, advise Culbreath on how to proceed, or to even request any information about the particulars of the agreement (*i.e.* how the $295,000 amount was calculated).  Now that the Eleventh Circuit has determined that the subject policy does cover prevailing party attorney's fees, Travelers' inaction during the settlement negotiations can be characterized at most as a wrongful refusal to defend, the second element of a plaintiff's *prima facie* case to enforce a Coblentz agreement.  Such inaction on the part of Travelers by no means establishes that the eventual settlement was

-13-

made in good faith and was for an objectively reasonable amount as required by the third (and separate) element of a plaintiff's *prima facie* burden of proof. Coblentz and its progeny make clear that to be enforceable against an insurer, a consent judgment must be objectively reasonable. Sinni, 676 F. Supp. 2d at 1324 (citations omitted).

Travelers explained in detail in Section III(B)(ii) of its Post-Trial Brief[36] how the amount of the settlement between Kirkwood and Culbreath, which compensates B & E at a rate of $842 per hour to defend a suit to enforce deed restrictions (which B & E itself described as frivolous), is not objectively reasonable. The reasons include the failure of the parties, contrary to Florida law, to hold an evidentiary hearing and obtain specific findings on the reasonableness of the fee award (which would have presumptively established the propriety of the amount awarded), Friscia's testimony that he (an attorney who had been practicing in this area of law for many years) had *never* seen an hourly rate that high awarded in such an action,[37] attorney Michael Addison's ("Addison") expert report opining that $400 was the upper limit of acceptable hourly rates for B & E's services, Plaintiffs' misplaced reliance on First Baptist Church of Cape Coral, Fla., Inc. v. Compass Constr., Inc., 115 So. 3d 978 (Fla. 2013) to argue that alternative fee arrangements where a party is awarded more if it collects from the losing party than if it

---

[36]  See docket 172.

[37]  See Trial Transcript, Volume ("Vol.") 3, p. 41:10-43:13. This testimony renders his purported "fear [that] court-awarded fees would be far greater" than the $842 per hour conferred by the settlement (Dkt. 173, p. 6) completely unfounded and further undermines his credibility.

paid its fees itself are authorized in Florida,[38] and the inherent lack of credibility of Friscia and Buell's testimony and affidavits (the only evidence Plaintiffs offered to support the reasonableness of the $295,000 fee).[39] Plaintiffs simply cannot meet their *prima facie* burden of showing that the $295,000 award is reasonable.

Some courts have evaluated reasonableness under Coblentz by examining what settlement a reasonable person in the position of the insured would have reached on the merits of the plaintiff's claims if the insured was required to pay the settlement itself. See Bond Safeguard Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 2014 WL 5325728, at *9 (M.D. Fla. Oct. 20, 2014), aff'd on other grounds, ___ F. App'x ___, 2015 WL 5781002 (11th Cir. Oct. 5, 2015) ("Florida courts test the reasonableness of a Coblentz agreement by what a prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim.") (internal quotation marks and citation omitted). This Court is able to determine whether an $842 per hour fee is reasonable

---

[38]   First Baptist Church, in sanctioning alternative fee arrangements, did not give a party *carte blanche* to collect its fees at whatever hourly rate it chooses; the party seeking to recover the fees still was required to justify its award to a trial court using the factors laid out in Patient's Comp. Fund v. Rowe, 472 So. 2d 1145 (Fla. 1985) and Quanstrom v. Standard Guar. Ins. Co., 519 So. 2d 1135 (1988) and was only entitled to recover a ***reasonable*** amount in light of these factors. See also TRG Columbus Dev. Venture, Ltd. v. Sifontes, 163 So. 3d 548, 552 (Fla. Dist. Ct. App. 2015) (agreement called for $350 per hour or higher, and after a hearing at which it "undertook a complete consideration of Quanstrom's factors," the trial court found $400 per hour was reasonable and applied multiplier); Wolfe v. Nazaire, 758 So. 2d 730 (Fla. Dist. Ct. App. 2000) (agreement called for rate of $85 per hour or higher, court found $100 per hour was reasonable).

[39]   See docket 172, Section III(b)(ii).

without speculating as to what Culbreath's motives might have been and what a prudent insured in Culbreath's position would have done.  See Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court, either trial or appellate, is itself an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir.1940)).  The evidence adduced at trial indisputably demonstrates that Culbreath never would have agreed to award B & E $295,000 if the association had been required to pay that sum itself.

The Court must agree with Travelers that there is no better way to evaluate how a prudent insured in Culbreath's position *would have* acted than to examine how the association *actually acted* when it faced exposure for Kirkwood's fees. The fee agreement between Kirkwood and B & E called for an hourly rate of $300 with an inflated sum of $900 per hour if Kirkwood was awarded prevailing party fees.  Prior to the settlement of the underlying action (*i.e.*, when Culbreath was still faced with the prospect of paying Kirkwood's fees), Friscia (on behalf of Culbreath) commissioned and approved Addison's expert report, which opined that $300 to $400 per hour was the upper limit of the fees B & E was entitled to for representing Kirkwood in this matter and that the firm spent an excessive number of hours on the underlying action.[40]  Friscia testified that he

---

[40]   See Defendant's Trial Exhibit 53.

was convinced of the correctness of Addison's opinion and was prepared to present it to the state court.[41]  It is, therefore, evident to this Court that Culbreath ceased acting as a reasonable and prudent insured as soon as it determined it could have a third party (Travelers) pay Kirkwood's fee award.

As Travelers points out, Culbreath's handling of the Lewises' negotiations also proves that its behavior in settling the Kirkwood matter deviated from reasonable and prudent once it determined it could avoid paying B & E's fees itself.  Frick, counsel for the Lewises in the underlying action, testified that Culbreath essentially invited the Lewises to follow Kirkwood's lead by naming their own price in exchange for a covenant to seek collection from Travelers and not Culbreath.[42]  As Travelers asserts, this was confirmed in an exchange of correspondence between Frick and Friscia.  Frick inferred that Culbreath simply agreed to an unspecified multiplier on top of B & E's actual fees in exchange for a promise not to collect from the association,[43] to which Friscia responded "[c]learly, as you surmised in your correspondence, this explains why the amount of the judgment is what it is."[44]  In light of the foregoing, it is highly unlikely that Culbreath would have been willing to allow either Travelers in the underlying action to, as Frick

---

[41]  See Trial Transcript, Vol. 3, pp. 31:14-33:6.

[42]  See Trial Transcript, Volume 2, pp. 102:24-103:12; 104:25-105:6.

[43]  See Defendant's Trial Exhibit 27.

[44]  See Defendant's Trial Exhibit 28.

stated, "stipulate to whatever number you want,"[45] had the association been required to pay the resulting judgment itself.  In fact, when the Lewises declined to accept an inflated number in exchange for a covenant not to execute, Culbreath proceeded to a contested evidentiary hearing that resulted in a judgment against the association.[46]  Therefore, the settlement was not objectively reasonable.

Not only was the settlement not objectively reasonable, it was reached in bad faith on the part of both parties.  B & E, through Buell, negotiated and executed a settlement agreement without the consent of its incapacitated client that awarded the firm $842 per hour while forfeiting Kirkwood's rights against Culbreath and delaying her recovery of the $20,400 she actually paid the firm.  Instead of consulting with Kirkwood or waiting until a guardian was appointed, B & E unilaterally executed the settlement on her behalf.  B & E's indefinite postponement of Kirkwood's recovery for its own benefit illustrates the conflict of interest the firm faced when resolving the underlying action--a conflict that taints the settlement.  Buell, on behalf of B & E, then represented falsely to the state court that (1) he was "expressly authorized" by Kirkwood to sign the stipulation; (2) he was "expressly… instructed" by Kirkwood to sign the stipulation; (3) Kirkwood was "freely and voluntarily" entering into the agreement; and (4) Kirkwood had been "fully advised

---

[45]  See Trial Transcript, Vol. 2, pp. 102:24-103:2.

[46]  See Defendant's Trial Exhibit 30.

of the legal effect" of the agreement.[47]  Had the truth been disclosed to the state trial

judge, as Buell was obligated to do under Rule 4-3.3(a)(1) of the Rules Regulating the

Florida Bar,[48] the judge likely would not have entered a final judgment.

The Court finds that Travelers' presentation of evidence regarding Kirkwood's

incapacity and the identification of Buell's misrepresentations to the state court are not

designed to void or in any way invalidate the final judgment.[49]  Rather, the Court must

agree with Travelers that these factors illustrate a pattern of scheming and self-dealing

without which the entry of a final judgment for the inflated sum of $295,000 (collectable

only against Travelers) would not have been possible.[50]  Enforcing a judgment procured

under these circumstances against Travelers (a non-party to the underlying action) would

clearly run contrary to the good faith requirement promulgated by Coblentz and its

progeny.

---

[47]  See Plaintiffs' Trial Exhibit 112, ¶11.

[48]  This rule, under the heading of "Candor Toward the Tribunal," provides in pertinent part that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal . . ." See also Ramey v. Thomas, 382 So. 2d 78, 81 (Fla. Dist. Ct. App. 1980) (stating that "[a]n attorney is first an officer of the court, bound to serve the ends of justice with openness, candor, and fairness to all.").

[49]  See docket 172, Section II.

[50]  Plaintiffs' argue that "[i]f the settlement was as outrageous, collusive and made in bad faith as Travelers now asserts, Travelers surely would have objected." (Dkt. 173, p. 17). However, at the time of the settlement, Travelers did not know that Kirkwood was incapacitated and did not learn this fact until discovery in this action or that Buell intended to represent otherwise in the stipulation and execute the agreement on her behalf.  Additionally, Travelers had no reason to inquire about these issues in light of its coverage position.

To the extent Plaintiffs claim that only Culbreath's conduct in settling the underlying action is relevant when determining bad faith, it is clear that the association acted in bad faith when it offered to "lie down" and accept a judgment of $295,000 against it as long as recovery of that sum came from Travelers (and pursuant to the side deal, its own exposure was limited to $50,000 if the judgment could not be collected against Travelers).[51]   Additionally, it is unquestioned that by agreeing to the inflated amount reflected in the settlement without serious negotiation, despite previously intending to vigorously contest both B & E's hourly rates and the time spent, by insisting on a covenant not to execute, and by assigning its rights under the policy to Kirkwood and B & E and later Florida Policyholders, Culbreath exposed Travelers to the duplicity of Kirkwood's lawyers.  Without Culbreath's willingness to "lie down," Travelers would not have had to contend with B&E's bad faith in executing the settlement and procuring the final judgment in its favor.

The Court also rejects Plaintiffs "vouching in" argument as an effort to circumvent the good faith and reasonableness requirements of Coblentz.  Plaintiffs argue that Travelers, "[h]aving been made aware of the progression of the negotiations, having been given the opportunity to appear and defend, having been provided with all of the material terms of the agreement, and having been given an opportunity to object ... sat idly by, allowing the settlement to be consummated," is "vouched in," and may not now contest

---

[51]   See docket 172, Section III(B)(i)(d).

the enforcement of the agreement.[52]  The Court agrees with Travelers that if it were to accept this argument, the good faith and reasonableness requirements of <u>Coblentz</u> would be rendered superfluous.  In fact, a case cited by Plaintiffs even discusses that for an indemnitor to be "vouched in," "[t]he judgment… must be rendered without fraud or collusion… Premised on the concepts of estoppel and *res judicata*, the judgment rendered in the main action establishes for purposes of the indemnity action all of the material facts litigated in the main action."  <u>Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.</u>, 853 So. 2d 1072, 1079 (Fla. Dist. Ct. App. 2003).  The issues here--the reasonableness and good faith of the settlement--were plainly not litigated below.  The state court, at the behest of the parties and in derogation of Florida law, never held the required hearing on these <u>Coblentz</u> elements, and the mere entry of a consent judgment does not constitute "litigation" of an issue.  <u>See</u> <u>Lozman v. City of Riviera Beach, Fla.</u>, 713 F.3d 1066, 1079 (11th Cir. 2013) ("Although a stipulated dismissal qualifies as a dismissal on the merits for *res judicata* purposes, Florida courts do not seem to recognize issued [sic] resolved with a judgment entered into by consent or stipulation as being actually or fully litigated for collateral estoppel purposes."); <u>JFK Med. Ctr., Inc. v. Price</u>, 647 So. 2d 833, 834 n.1 (Fla.1994) ("Moreover, a judgment by consent, though it terminates the claim to which it refers, is not an actual adjudication.").

---

[52]  <u>See</u> docket 173, page 19.

Finally, the Court rejects Plaintiffs' argument that Sidman's pursuit of this lawsuit somehow "ratified" the underlying settlement and thereby excused Buell's bad faith in negotiating the agreement, executing it on behalf of the incapacitated Kirkwood, and making misrepresentations to the state court.  The record before the Court indisputably reflects that she was completely unaware of the material circumstances informing the execution of the settlement agreement or the relevant events leading up to and culminating in the filing of this lawsuit and that she relied on the judgment of the lawyers without asking for particulars.[53]

In conclusion, the Court recognizes that "<u>Coblentz</u> permits the insured to take reasonable measures to protect itself that would otherwise be prohibited by the policy as inimical to the carrier's interest."  <u>Bond Safeguard Ins. Co.</u>, 2014 WL 5325728, at *9 (citation omitted).  However, the Court is also aware that "[w]hat <u>Coblentz</u> does not do is authorize the insured to indiscriminately load the carrier's wagon with blocks of damage that no reasonable person would expect as consequences of the underlying claim."  <u>Id.</u> The indisputable evidence convinces the Court that is precisely what occurred in this case: Buell, acting on behalf of B & E, and in collusion with Culbreath's attorney, Friscia, formulated an objectively unreasonable attorney's fees' settlement agreement designed to "load Travelers' wagon with blocks of damage that no reasonable person would expect as consequences of the underlying claim" for reasonable attorney's fees and later convinced

---

[53]  <u>See</u> Trial Transcript, Vol. 3, pp. 155:13-22; 158:12-25; 159:1-21.

-22-

the Florida state court, based on false representations, to enter a consent final judgment approving the agreement without convening a hearing to determine in fact whether the agreed upon attorney's fees were objectively reasonable in conformity with the dictates of First Baptist Church and its progeny.

      **ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

      The Clerk is directed to enter judgment in favor of Defendant Travelers Casualty and Surety Company of America and against Plaintiffs Orline Sidman, as plenary guardian and on behalf of Phyllis Ann Kirkwood, and Florida Policyholders, LLC and to close this case.

      **DONE AND ORDERED** at Tampa, Florida, on October 22, 2015.


        ___s/*Richard A. Lazzara*_____
        **RICHARD A. LAZZARA**
        **UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record

Respectfully submitted,

_s/ Raymond T. Elligett, Jr._                 _s/ George A. Vaka_
Raymond T. Elligett, Jr., Esq.               George A. Vaka, Esq.
Florida Bar No. 261939                       Florida Bar No.
elligett@belawtampa.com                      gvaka@vakalaw.com
Mark P. Buell, Esq.                          Nancy A. Lauten, Esq.
Florida Bar No. 217603                       Florida Bar No.
buell@belawtampa.com                         nlauten@vakalaw.com
Buell & Elligett, P.A.                       Vaka Law Group, P.L.
3003 W. Azeele Street, Ste. 100              777 S. Harbour Island Blvd., Ste. 300
Tampa, Florida   33609                       Tampa, FL   33602
(813) 874-2600                               (813) 549-1799
Attorneys for Appellant Orline M. Sidman     Attorneys for Florida Policyholders

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served this Appendix- Volume II on the Clerk of the U.S. Court of Appeals for the Eleventh Circuit and served a copy on each party or their counsel of record listed below this 5th day of February, 2016:

Andrew V. Tramont, Jr., Esq.
Bradley B. Aserlind, Esq.
Rodriguez Tramont Guerra & Nunez, PA
255 Alhambra Circle, Suite 1150
Coral Gable, FL 33134

Joseph T. Kissane
Cole, Scott, & Kissane
4686 Sunbeam Road
Jacksonville, FL 32257

_s/ Raymond T. Elligett, Jr._                 _s/ George A. Vaka_